STATE EX REL. MENGEL, Respondent, vs. STEBER, Appellant.

*September 19—October 7, 1913.*

*Corporations: Toll-road company: Power to lease: Validation of lease by statute: Rights of assignees: Holding over after term: Abandonment of road: Pleading: Construction: Answer: Excessive claim:* Quo warranto.

1. Although a toll-road company, created by the legislature in 1848, was not originally given power to lease its property and franchises, such power might afterwards be conferred by a statute ratifying and validating a lease which the company had given and the title acquired through successive assignments of such lease.

2. Although in such case technically accurate words were not always used in the transfers forming the chain of title to the leasehold, yet since no particular form of conveyance was required by law, and there was a succession of possession, enjoyment, and claim of right referable to such chain, the last transferee succeeded to all the rights of the original lessee.

3. The validation of the lease by legislative act gave it the same

character as if the lessor had originally had authority to make it, and gave the parties the same status at the end of the term; so that, when the transferee of the lease then in possession continued for a week to operate the property as before, the possession was that of a tenant holding over and did not indicate an abandonment under sec. 1895, Stats., which would render the road a public highway.

4. In an action of *quo warranto* against such a tenant holding over after the expiration of the lease, to test his right to exercise the franchises of the corporation, the fact that he claimed to be the owner of the toll road and franchises, instead of a tenant holding over, did not render his answer demurrable, where the other facts stated therein showed that his possession and operation of the road were lawful.

5. Under the Code, the proper test of a pleading is not the pleader's claim as to his rights upon the facts alleged, but the justice of his case for attack or defense on all the facts stated expressly or appearing by reasonable inference, giving to the pleading the most liberal construction it will fairly bear in favor of the pleader.

6. The rules of pleading are the same in a *quo warranto* action as in any other civil action.

APPEAL from an order of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

*Quo warranto* action to test the validity of defendant's claim of right to exercise the franchises and privileges conferred upon the Sheboygan & Fond du Lac Plankroad Company in 1848.

Plaintiff charged that defendant was exercising corporate privileges and franchises not granted to him by any law of this state, or assigned to him or under his control, by demanding and collecting toll from the complainant and the public generally as a condition of enjoying a certain public highway extending from the city of Fond du Lac into the incorporated village of Taycheedah, all in Fond du Lac county, Wisconsin.

The defendant answered, in effect thus: The territory of Wisconsin, in March, 1848, created a corporation under the name of the Sheboygan & Fond du Lac Plankroad Company

and conferred upon it a franchise for the construction and operation, perpetually, of the toll road in question. April 3, 1863, the corporation, by its president and board of directors, leased its corporate property and franchises to one H. J. Van Curen for fifty years from the preceding 1st day of June. The leasehold rights by an unbroken chain of conveyances became vested in the defendant March 11, 1908, and he still possesses the same. From the time of the lease in 1863, the person or persons claiming thereunder have been in possession of the toll road and operated the same under claim of right in good faith, basing such claim on the corporate charter and chain of title aforesaid and without hindrance or challenge of their authority to do so. The property was acquired by defendant for a valuable consideration and without notice of any infirmity in his chain of title. During all the time from the lease in 1863, down to and inclusive of the time of the commencement of this action, the property has been possessed and operated in the name of the President and Directors of the Sheboygan & Fond du Lac Plankroad Company. A large sum of money has been expended in building and keeping the road in a suitable condition for use. Edward Pier and E. H. Galloway came into possession of the property through mesne conveyances from the original lessee, May 28, 1874. They took possession under a conveyance which was recordable under the laws of this state and was duly recorded April 29, 1874. Possession under the original law and operation of the property, with the franchises, has been continuous, notorious, and undisturbed from the date of such lease and claims thereunder. During that time license fees and taxes have been regularly exacted of the possessors, as owners or holders of the property, and so liable therefor, and have been paid, and during all such time all the requisites of the charter granted in 1848 have been fully complied with.

A copy of the act incorporating the Plankroad Company and granting it the franchises and privileges mentioned, was

made a part of the answer. No express authority was given thereby to lease or assign the property or franchises. A copy of the lease was also made part of the pleadings. It, in terms in consideration of $9,000 to be paid in a particular manner, conferred upon the lessee, his heirs, representatives, and assigns, the right to possess and operate all the corporate property and privileges for the period of fifty years, and to use the name of the company in doing so, the lessee, his heirs or assigns, to keep the company harmless from all actions or claims of any nature, pay all taxes or assessments on the property, maintain the same in a good state of repair, and to surrender it to the company at the end of the term. There were other allegations to the effect that defendant was the owner of the toll road and right to operate.

Copies of other papers forming defendant's chain of title were made part of the answer, showing intention, at all times, to vest in the possessor and operator of the road all the rights conferred upon the original lessee.

Though not pleaded, other than inferentially, by the general allegation of the right to possess and operate the property, in 1874 by ch. 103 of the Laws of Wisconsin for that year, passed after the leasehold interest, through several successive transfers, had become vested in Pier and Galloway, the lease was validated in all respects, coupled with a legislative requirement that the validating act shall be "liberally construed in all courts and places for the purpose of carrying out the objects thereof," these words being used:

"And the said lessee, his heirs, representatives and assigns shall have and enjoy all the rights, privileges and franchises conferred upon him or them, or which were intended to be conferred upon him or them by the terms of the lease aforesaid in as full and ample a manner as the same are set forth therein and as though the said president and directors at the time of the making, executing and delivery thereof had under and by virtue of the charter of said company full

power and authority to make said lease and to confer upon the said lessee, his heirs, representatives and assigns all the powers, privileges, rights and franchises therein mentioned.

"The assignees of the said Henry J. Van Curen, either immediate or remote, their heirs or representatives, are hereby authorized and empowered to have and exercise in the name of said company, all the, powers necessary to protect said road rights, privileges and franchises, so leased by the said president and directors of said company to the said Van Curen, and to enforce the collection of tolls thereon in as full and ample a manner as said company would have were it in occupation of the same road rights, privileges and franchises under its charter, and for that purpose may bring any and all suits and actions, and do any other act or thing which said company might bring or do for the enforcement of its rights, the protection of its road, privileges and franchises, and the collection of tolls on the part of said road so leased to the said Henry J. Van Curen, his heirs, representatives and assigns, if said company were in the actual possession of said road and occupying the same under this charter.

"In order to establish the right to maintain an action on the part of the assignees of the said Henry J. Van Curen, his heirs or representatives, in the name of said company, for the enforcement of their right under said lease, for the protection of their said road, property or franchises, or for the collection of tolls thereon, it shall not be necessary on the part of the plaintiff to prove the organization of said Sheboygan & Fond du Lac Plankroad Company under its charter, nor the continuance or present organization of said company, but it shall be sufficient to produce in evidence the lease executed by the president and secretary of said company to the said H. J. Van Curen, or otherwise to prove the making and delivery of the same, and that the party or parties instituting such suit or suits has acquired the rights and interests of the said Van Curen by assignment or otherwise, and it is in the possession of said road, rights, privileges or franchises claimed under said lease."

Plaintiff demurred to the answer for insufficiency. The demurrer was sustained and defendant appealed.

For the appellant there was a brief by *Swett & Keck,* and oral argument by *H. E. Swett.*

*Charles D. Smith,* for the respondent.

MARSHALL, J.    It must be conceded that, whether the Plankroad Company possessed power to make the lease to Van Curen, it was competent for the legislature to have given it such power, originally, or to confer it by ratification, as was done by the act of 1874.    Therefore, he and all who took title through or under him, for the full term of fifty years, succeeded to all authority to maintain and operate the toll road which the original grantee possessed.    The validating act is very specific.    Note the language:

"And the said lessee, his heirs, representatives and assigns shall have and enjoy all the rights, privileges and franchises conferred upon him or them, or which were intended to be conferred upon him or them by the terms of the lease aforesaid in as full and ample a manner as the same are set forth therein and as though the said president and directors at the time of making, executing and delivering thereof had under and by virtue of the charter of said company full power and authority to make said lease and to confer upon the said lessee, his heirs, representatives and assigns all the powers, privileges, rights and franchises therein mentioned."

Note also the unmistakable purpose of the act to render the holder of the leasehold, to all intents and purposes, the rightful representative of the corporation for the full leasehold term and to conclusively quiet all questions as to the right of the company to make the lease of its property, including its franchises, and all question as to assignability of the lease, regardless of the continued existence of the company.    The original lease and chain of title under it were expressly made conclusive proof of the right of the last one in the chain; that one being in actual possession of the property, claiming under such chain, by assignment or otherwise, to exercise all the

powers and privileges conferred by the original grant, and, to render doubly sure that the claimant under such chain should not have his right efficiently challenged, the legislature declared that the act should be liberally construed in all courts and places for the purpose of carrying out the objects thereof.

Notwithstanding, technically, accurate words were not used in all cases in the papers forming the aforesaid chain of title,—since no particular form of conveyance was required by law, and there was a succession of possession, enjoyment, and claim of right referable to such chain, and it was recognized as efficient down to and inclusive of the act of 1874 and did not materially change in character down to and inclusive of the situation when this action was commenced,—there seems to be no fair room for doubt but what defendant to the end of the fifty-year term possessed all the rights which the original lessee acquired, viz.: not only to possess the road, franchises, and privileges as fully as the lessor could, but also to have and exercise, in the name of the company, "all the powers necessary to protect said road rights, privileges and franchises, . . . and to enforce collection of tolls thereon in as full and ample a manner as said company would have were it in the occupancy of the same road rights, privileges and franchises under its charter, and for that purpose" do anything which the company might do "for the enforcement of its rights, the protection of its road, privileges and franchises, and the collection of tolls" the same as if the company "were in the actual possession of said road owning and occupying the same under this charter." The term covered by the statute was fifty years from and after June 1, 1862, and, thereafter, the mere fact that the person in possession to the end of the term continued operating the property as before up to the commencement of this action,—a period of about one week,—does not efficiently indicate an abandonment under sec. 1895, Stats., so as to render it a public highway. The

sixty days of the statute had not expired when the action was commenced. Moreover, the validation of the lease gave it the same character as if the lessor had original authority to make it, and the parties the same status at the termination of the leasehold period. Full right to the property then reverted to the corporation, and the person in possession possessed it for the former in the capacity of a tenant holding over.

It would seem to follow that the defendant was not unlawfully, as regards the public, committing the wrongs charged against him when this action was commenced or when it was terminated. The trial court held, in harmony with this, so far as the leasehold term is concerned,—that is, that the various persons in the chain of title from the original lessee, including the defendant, became possessed of all the rights attempted to be created by the lease down to and inclusive of June 1, 1912, but seemed to think that, because the corporation did not immediately step in and repossess the property at that time, and defendant claimed title in excess of what he actually possessed, that he was a wrongdoer,—a usurper as against the public,—and though the franchises granted to the corporation were not forfeited, an action would lie to prevent any one but the corporation from exercising them after expiration of the leasehold term, under any claim of title not referable to the lease and dependable upon it; and, inasmuch as defendant claimed as owner instead of as tenant holding over, his answer was demurrable. The court adopted rather a too technical rule for testing the sufficiency of the pleading. It is contrary to the letter and spirit of the Code and of repeated decisions of this court in respect thereto. The proper test is not what the pleader claims to be his rights on the facts alleged, but the justice of his case for attack or defense on all the facts stated expressly, supplemented by all which appear by reasonable inference, giving to the pleading the most liberal construction it will fairly bear in favor of the pleader. Under that rule it makes no difference that the

defendant alleged himself to be the absolute owner of the property in question, though his right were that of a lessee.

The facts pleaded, expressly, and inferably, show that defendant claims the rights of a lessee under the lease of 1863, and makes in addition a claim of ownership by reason of the facts. If he have not the latter right, but be possessed of the former, the mere excessive claim does not render the pleading demurrable.

The learned circuit judge erred after rightfully holding,

"If the defendant were answering that he is exercising the right in question by authority or permission given by the original incorporation after expiration of the lease, or as a tenant at will or by sufferance of that corporation, the point would quite likely be well taken,"

that notwithstanding the facts pleaded show clearly that his position and acts were legal by reference to the lease, they were illegal because he claimed rights of a still greater dignity.

The rules of pleading are the same in a *quo warranto* action as in any other. A defendant is not held to any strict accuracy of claim, and his pleading to be construed out of harmony with the liberal rules of the Code. He is entitled to stand on whatever his rights are, as indicated expressly, or inferentially from his pleading—regardless of any excessive claim therein or otherwise as to his legal status.

The statutory repeal of the common-law requirement as to writs of *quo warranto* and informations in the nature of *quo warranto,* and placing the vindication of violated public and private rights which were formerly exclusively within the field of such remedy within that of the ordinary civil action, made operative in respect thereto all those liberal rules of pleading which characterize the Code remedy. The old forms, as was early held, were intended to be abolished by the Code and the ordinary civil action substituted, to be commenced and prosecuted in all respects like other civil actions.

*State ex rel. Att'y Gen. v. Messmore,* 14 Wis. 115. Such an action is wholly governed by sec. 3463, Stats., and the established principles in the written law respecting civil actions. *State ex rel. Atkinson v. McDonald,* 108 Wis. 8, 84 N. W. 171. True, the nature of the remedy was not abolished by the Code; so old names have been retained and are commonly used as the most convenient way of referring to the subject; but the form and the. technical rules of pleading have been done away with, and the court, when invoked in the new form, should be guided by the real justice of the controversy from the standpoint of the law within the scope of the case disclosed by the pleading, broadly construed. True, now as before, the alleged wrongdoer must answer, when sufficiently charged, upon what warrant he claims the authority he assumes to possess (*State ex rel. Att'y Gen. v. Foote,* 11 Wis. 14), but his true status must depend upon the facts disclosed rather than any conclusion of law or fact which may be pleaded.

It follows that the order appealed from must be reversed, and the cause remanded for further proceedings according to law.

*By the Court.*—So ordered.