KLAUSER, Respondent, vs. REEVES, Appellant.

*November 10—December 7, 1937.*

For the appellant there was a brief by *Lehner & Lehner, Adolph P. Lehner,* and *James H. Larson,* all of Oconto Falls, and oral argument by *Philip Lehner* and *Doris E. Lehner.*

*Harold W. Krueger* of Oconto, for the respondent.

WICKHEM, J.  Plaintiff's complaint alleged that defendant is engaged in the business of operating a chick hatchery; that on October 2, 1929, January 23, 1930, and January 29, 1930, Alfred B. Reeves, former husband of defendant, executed to plaintiff three promissory notes in the aggregate sum of $1,700, all of which are overdue, and upon which there is now due the sum of $1,700 in principal and $75 in interest; that on or about March 18, 1936, in a divorce action then

pending between the said Mary J. Reeves and Alfred B. Reeves, her husband, the said Mary J. Reeves and Alfred B. Reeves entered into a stipulation, in writing, signed on that day by the said Mary J. Reeves and her attorney, which provided, among other things, that the said Mary J. Reeves, in settlement as and for a final division of property, and in lieu of alimony, should receive the property thereafter described *subject to* the outstanding debts against the business. It was alleged that the debt owed to plaintiff was included in the debts listed in the stipulation. The complaint further alleges that a judgment was entered in the divorce action "wherein and whereby the said Mary J. Reeves received as a final division of property all fixtures and utensils connected with said chick hatchery business and real estate." There follows a description of the real estate involved in the property settlement, and the further allegation that the judgment provided "that the said Mary J. Reeves take title to said real estate fixtures and utensils subject to the debts listed on 'Exhibit B' in the findings of fact referred to in said divorce judgment. That the debt to Lizzie E. Klauser is listed under item 9 of said 'Exhibit B' aforementioned." The complaint concludes with the allegations that subsequent to the divorce decree the hatchery and fixtures were wholly destroyed by fire. The question is whether these allegations are sufficient to charge that defendant assumed the debt of her husband to plaintiff and became personally liable therefor. This depends upon the significance of the words "subject to" as contained in the stipulation and judgment. The term "subject to" has been most frequently used with respect to the conveyance of mortgaged property, and it is elementary, as stated in *Cleveland v. Southard,* 25 Wis. 479, that a conveyance of land subject to a mortgage imposes no personal obligation upon the vendee to pay the debt thereby secured. See also *Tanguay v. Felthousen,* 45 Wis. 30. This doctrine is so established as to make further exposition unnecessary.

The mortgage cases are not particularly helpful in the solution of the question involved upon this appeal. In the conveyance of mortgaged property, the purpose of employing the term "subject to mortgage" is to make clear that the grantee takes an incumbered estate and perhaps also to avoid a breach of warranty by the grantor. In this case it can have no such purpose. So far as appears from the allegations of the complaint, the property transferred to defendant by the divorce judgment was not incumbered by any liens based upon the listed debts of defendant's husband, and the purpose to convey merely an equity in incumbered property is therefore not evidenced by any of the allegations concerning the transaction. It is manifest, however, that there was some purpose in making the allocation of the husband's property to defendant subject to such of his debts as were listed in the stipulation. It is equally manifest that there could only be two purposes for inserting this qualifying clause: (a) To make the debts listed a lien or charge upon the property conveyed to defendant; or (b) to impose upon defendant a personal liability for such debts. In either event, creditors could, under the rule of *Tweeddale v. Tweeddale,* 116 Wis. 517, 93 N. W. 440, take advantage of the agreement as one made for their benefit, the only difference in the two cases being the extent and scope of the creditors' rights.

In approaching a determination of the effect of the qualifying clause under consideration, two factors are significant: (1) That the transfer to defendant was not subject to the *payment* of debts, but was merely subject to the debts; (2) that the property so far as disclosed by the facts alleged was not subject to any lien arising out of these debts. Had the transfer been made subject to the payment of the debts, the stipulation and judgment would tend to disclose an intention that defendant assume the debts as her personal liability in view of the fact that the debts were not liens upon the property. Had such been the form of the stipulation and judg-

ment it might well be that the case of *Dingeldein v. Third Avenue R. R. Co.* 37 N. Y. 575, would apply. In that case a transfer was made by a partnership to the defendants of their road, franchises, horses, harness, etc., subject to the payment of all the money which the partnership was bound to pay on account of sewers, etc. It was held that a party having a claim on account of sewers could maintain an action against the defendant, and that such a person, by operation of the doctrine of *Lawrence v. Fox,* 20 N. Y. 268, would recover from defendants the amount due from the partnership. After discussing an earlier case in which it was held that the conveyance of property subject to mortgage simply amounted to a conveyance of the equity of redemption of the land, and did not impose any personal liability upon the grantee to pay the debts secured by the mortgage, the court said:

"In the present case the language of the instrument and the intent of the parties are different. Here was no incumbrance on the property conveyed. The contract to indemnify the builder of the sewer was merely the personal obligation of the partnership, and was not a lien upon the property conveyed. The intent to qualify a liability arising from such lien upon the property conveyed, could not, therefore, exist. The only conceivable intent with which this sewer contract was thus referred to, was to furnish the evidence that the new company would pay to Dingeldein the amount which the partnership was bound to pay, under the resolution referred to. The fact that in *Belmont v. Coman* the words were necessary to qualify the grantor's liability, and that here there was no such occasion, gives a different rule for the construction of the words in the two cases.

"The language, too, is different, and may well bear a different construction. In *Belmont v. Coman,* the land is conveyed 'subject to the mortgage.' There is a significant difference between the expression 'subject to a mortgage,' and 'subject to *the payment* of a certain debt.' In the present case, the property of a partnership, consisting of a railroad franchise, a road partly built, cars, horses, sleighs, harness, leases and licenses, is transferred to a corporation, *'subject*

*to the payment* by the parties of the second part of all the money which the partnership are bound to pay on account of sewers,' specifying the claim in question. They do not take the property 'subject' to an incumbrance of the sewer debt, for there is no such incumbrance. It formed no lien on the property sold, and no connection with the subject unless the debt was intended to be assumed. They take it subject 'to the payment' by themselves of the sewer debt, *i. e.*, to a liability by themselves to pay the debt. They undertake to relieve the partnership from the payment of the debt, and to make themselves liable or responsible for it."

In *Hoy v. Bramhall,* 19 N. J. Eq. 74, there was a conveyance of a part of mortgaged premises "subject to the payment of all liens now on said premises." It was held that this imposed no personal liability in spite of the use of the phrase "subject to the payment" rather than "subject to the mortgage or liens." Thus, in the *Dingeldein Case* the fact that the property transferred was unincumbered, and that the transfer was *subject to the payment* of certain of grantor's debts, was treated as imposing liability for these debts upon the grantee because such a result furnished the only explanation for the use of this phrase under the circumstances. In the *Hoy Case,* the use of the form "subject to payment" was not of itself considered a sufficient indication of a purpose to make the grantee personally liable for liens and mortgages because the incumbered state of the property was a sufficient explanation for inclusion of the qualifying phrase. In view of this, it was held that the qualifying phrase was merely to indicate the conveyance of an incumbered estate. The case at bar is not quite like either of the foregoing cases. Here the property is unincumbered as in the *Dingeldein Case,* but the formula is that usually adopted in mortgage cases. We are unable to give to the stipulation and the judgment the effect declared in the *Dingeldein Case* because of the failure to add words such as "payment" indi-

cating an intention that defendant assume a personal liability for the listed debts. We are unable to give it the significance that it has in cases of the transfer of incumbered property because, so considered, it is meaningless and without purpose. In order to assign a sensible purpose to this qualifying clause, we must consider that its effect was to charge the listed debts as liens upon the property transferred.

In *Hammond's Estate,* 197 Pa. 119, 46 Atl. 935, 936, dealing with the construction of a will by which land was devised—

"subject to the following payments and conditions, to be paid and fulfilled by my said son, Henry K. Hammond. . . . The said Henry K. Hammond to pay my executor hereinafter named the sum of $2,500, to be distributed as hereinafter directed as part of my estate,"—

the court said:

"By the words 'subject to' the payment of $2,500 to his executor, the testator evidently meant that the devise was to be burdened with the said sum until paid. . . . If the words used had been 'subject to and charged with,' they would not more certainly define the condition of the devise. Used in such connection, 'subject to' and 'charged with' are equivalent and interchangeable terms, and either is sufficient to create a charge."

While this case might be an authority for holding that the effect of the stipulation and judgment would have been to create a charge rather than a personal liability even had the words been "subject to payment," it at least justifies the conclusion that such a phrase as "subject to debts," when used to qualify the conveyance of unincumbered property, has the effect of creating a charge or lien upon the property conveyed in favor of those creditors to whose debts the conveyance is subject. This conclusion is fortified by the nature and occasion of the transfer. Upon a division of property in a divorce action, the attempt is usually to ascertain and

give to the wife a net share of her husband's property. It is unlikely that a transfer subject to his debts would be for any other purpose than that of delimiting the amount of her share. This tends to repel the inference that a personal liability for debts of the husband was intended, but gives support to the inference that the property conveyed was to be subject to a lien or charge which would diminish its net value to her by the amount of the listed debts.

In view of this, it must be held that the allegations of the complaint are sufficient to state a cause of action in equity to charge the property received by defendant as a result of the divorce judgment with the lien of plaintiff's debt. While it is true that no equitable relief is demanded and that the sole prayer for relief is for a judgment at law upon notes, and while plaintiff is not entitled to this judgment, that does not warrant the sustaining of a demurrer to the complaint. The question upon general demurrer is whether any cause of action is stated. · If it is, the fact that plaintiff is not entitled to the relief demanded in the prayer is wholly immaterial. *Marien v. Evangelical Creed Congregation,* 132 Wis. 650, 113 N. W. 66; *Bannen v. Kindling,* 142 Wis. 613, 126 N. W. 5; *State ex rel. Mengel v. Steber,* 154 Wis. 505, 143 N. W. 156; *Sullivan v. Ashland L., P. & St. R. Co.* 156 Wis. 445, 146 N. W. 506; *Williams v. Oconomowoc,* 167 Wis. 281, 166 N. W. 322; *Neacy v. Drew,* 176 Wis. 348, 187 N. W. 218.

These conclusions compel affirmance of the order.

*By the Court.*—Order affirmed.