WALTERS, Respondent, vs. SENTINEL COMPANY, Appellant.

*November 6—December 3, 1918.*

Libel: *Newspaper article: Construction: Reflection upon plaintiff in professional and official capacities: Conditional privilege: Malice: Evidence: Harmless error: Excessive damages.*

1. In an action for libel the jury is *held* to have been justified in finding that the newspaper article in question falsely charged, in effect, that plaintiff had committed the crime of assault and battery, that he had not obtained a proper medical education, training, or diploma and that he was a quack doctor practicing as such, and that he was performing his duties as mayor of a city in a ridiculous, foolish, and silly manner and was a subject of ridicule and contempt.

2. So far as such article constituted a reflection upon the plaintiff in his professional capacity or accused him of crime it was libelous *per se.*

3. The gratuitous and unjust reference to plaintiff's professional qualifications and the insinuation that he had committed an assault and battery were not germane to a discussion of his official conduct as mayor and were not privileged.

4. A newspaper article which pictured the mayor of a city as performing his duties in a ridiculous, foolish, and silly manner and as a subject of ridicule and contempt, and which, taken as a whole, was not a fair comment upon him in his official capacity, was not conditionally privileged, even though published without malice.

5. Where a newspaper published primarily for a given constituency, such as county or state, church or lodge, has a small circulation outside of such constituency, it is not deprived of its privilege in the discussion of matters of concern to its constituency because of such incidental outside circulation.

6. But where a newspaper published in one city circulates throughout the state and extensively outside of the state, it is not privileged in the discussion of the official conduct of an officer of another city in which its circulation is but an insignificant proportion of the whole, the great bulk of its readers having no direct or legitimate interest in such conduct.

7. In an action against a newspaper publisher for libel, articles other than the one in question, which appeared in such paper, concerning the plaintiff, are admissible as bearing upon the question of express malice.

Walters v. Sentinel Co. 168 Wis. 196.

8. In an action for libel the admission of testimony bearing only upon the question of express malice was, if error, not prejudicial to defendant, where the jury found that there was no express malice in the publication.

9. An award of $1,800 (reduced by the court from $4,000) as damages for publication of a libelous newspaper article constituting a serious reflection upon the plaintiff in his professional and official capacities, is *held* not excessive.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Affirmed*.

Action for libel. The plaintiff was a physician by profession, and at the time of the publication of the article upon which this action is based was mayor of the city of Stevens Point. The following is the article:

"MAYOR GOES 'THE LIMIT' IN CLEANUP,

"Stevens Point Cowboy Executive in Lone-handed Reform.

"MAKES RAID ALONE.

"Dashes in Taxi to Hotel, Arrests Four for 'Shooting Craps.'

"FIGHTS OLD MAN.

"Sustains Kicked Shins from City Controller, Aged 65.

"Stevens Point, Wis., Nov. 20.—(Special).—*F. A. Walters*, Stevens Point's doctor-cowboy-lecturer-mayor, is 'going the limit—perhaps beyond the limit,' to clean up his city. He said so Monday morning.

"Already he has gone a long way toward 'the limit.' He has gone as far as participating in raids on alleged gambling joints and alleged illegally operated saloons, employing detectives from out of town, threatening suits against the newspapers of the city, personally arresting two men in a hotel, and openly stating his intention of obtaining dismissal of the chief of police.

"*Mayor Walters's* home was in Fond du Lac. Then he went out west and was a cowboy. When he came back it

was as a homeopathic doctor, but he retained, like Chicago's wild and woolly mayor, traces of his rough-and-ready career on the cattle ranges in the form of a sombrero and other 'trimmings.' For twenty-five years he lived here and at Wausau, Wisconsin. Then four years ago he was elected mayor. After three years in that office he was defeated for re-election by L. P. Pasternacki, Polish dentist. At the last election *Mr. Walters* was candidate again and was elected for his fourth term.

## "ADOPTS DRASTIC PROGRAM.

"Then he started his trip toward 'the limit.'

" 'The townspeople insinuated that things weren't run the way they ought to have been run when I was mayor before,' he said. 'So now I'll show them that I can run things strictly.

" 'We've got the cleanest little city in the state. But there are a few gamblers and sports here who have been living on the community for years. It's time for them to go.'

"So, shortly after his inauguration, he issued warning that gambling ordinances and the Sunday-closing law would be enforced to the letter. He started with the automobile tail light and the traffic laws.

"Presently, detectives appeared in Stevens Point. Then one Sunday morning the mayor personally assisted in raiding an alleged gambling resort over a saloon. Four men were arrested. One of them, 'Candy Pete' Mosel, was charged with running a gambling house, and another, Tom Leonard, with being a gambler. Next *Mayor Walters* and his purity squad raided the premises of the tailoring shop of Walter Glinski and arrested John Kutella on the charge of selling liquor on Sunday. The mayor's evidence sought to establish that there was a 'posted men's club' in the city through which the men on the blacklist were furnished with liquor.

## "WOMEN INDORSE HIM.

"About this time the mayor began to reap the rewards of the reformer. The Stevens Point Women's Club and a massmeeting of 300 citizens in the Baptist Church passed resolutions indorsing him.

"But opposition developed also. The mayor criticised Chief of Police John S. Hofsoos and tried to obtain dis-

missal of Patrolman Jadd Chenevert.  But the police and fire commission refused to back him up.

"He charged that a new $20,000 sewer project was not being inspected properly by the board of public works. When the board of public works resented this criticism, the city council abolished the board and put its work into the hands of a committee of its own members.  The board of public works, however, had friends; one of them was George Rogers, sixty-five years old, city controller and former mayor.  The mayor became involved in an altercation with the aged official.  They clinched.  The cowboy mayor had Mr. Rogers by the chin and arm, and Mr. Rogers had scored several kicks upon the mayor's shins.  Then the rest of the city administration separated the antagonists.

### "POLITICIANS LINE UP.

"Some time later a committee of citizens waited upon Dr. Pasternacki, *Mayor Walters's* predecessor, and asked him if he would be candidate for mayor at the next election.  Both the Stevens Point Daily Journal and the Weekly Gazette published this news, omitting the names of the committee. Whereupon the publishers were visited by Attorney A. L. Smongeski, who said that unless they divulged the names of the committeemen they would be sued for libel.  Saturday night was their last hour of grace, but by 10 o'clock Monday morning no papers had been served on the publishers.

"Meanwhile the chief of police had caught the reform fever and had caused two arrests.  The mayor appeared in court asking the dismissal of both actions, stating that one of the saloonkeepers, Winn Cowelsok, had kept open late to furnish liquor to a sick man, and that the other liquor dealer, John Lukaszewicz, had kept his place open because he was compelled to by four customers.  The cases were dismissed.

### "MAKES DRAMATIC RAID.

"Friday afternoon *Mayor Walters* received a tip that gambling was going on in the Soo Hotel on the south side of the city.  He leaped into a taxicab, sped southward, dashed into the barroom, whipped out his trusty revolver, and arrested four men.  He charged them with shooting craps.  They were arraigned on Saturday, but the case was dismissed for insufficient evidence,

"On Monday morning Stevens Point was prepared to watch the trial of Leo Boyanowski, charged with being keeper of a gambling joint. The outcome of the trial will determine the result of one of the mayor's raids. The other cases will follow.

"But besides that, Stevens Point was prepared for almost anything. The mayor has promised that within a week or ten days he will have new evidence pertaining to the dismissal of Chief of Police Hofsoos. And, furthermore, he has promised that he 'will go the limit—perhaps beyond the limit.' "

The jury returned the following special verdict: (1) that a person of average comprehension, upon reading the article, would have understood that it was therein stated and charged that the plaintiff attacked and assaulted Mr. Rogers; (2) that such statement and charge was, in substance, not true; (3) that a person of average comprehension, upon reading the article, would have understood that it was therein stated and charged that the plaintiff, *Dr. Walters,* had not obtained a proper medical education, training, or diploma and that he was a quack doctor practicing as such; (4) that a person of average comprehension, upon reading the article, would have understood that it was therein stated and charged that the plaintiff was performing his duties of mayor of said city of Stevens Point in a ridiculous, foolish, and silly manner and was a subject of ridicule and contempt; (5) that said statements and charges were, in substance, not true; (6) that the article published, taken as a whole, was not a fair comment on the acts of the plaintiff in his capacity as mayor of the city of Stevens Point; (7) that the defendant was not actuated by express malice in causing said article to be published; and (8) damages $4,000.

The court granted the plaintiff judgment upon the verdict on condition that he remit all damages in excess of $1,800, which condition was met by the plaintiff, and judgment was, accordingly, entered against defendant for $1,800. From the judgment so entered the defendant appealed.

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Louis Quarles*.

For the respondent there was a brief by *A. L. Smongeski* of Stevens Point, attorney, and *Bouck, Hilton, Kluwin & Dempsey* of Oshkosh, of counsel, and oral argument by *John F. Kluwin.*

OWEN, J. By its verdict the jury found that the article in question falsely represented, in effect, that the plaintiff had (a) committed the crime of assault and battery; (b) that he had not obtained a proper medical education, training, or diploma and that he was a quack doctor practicing as such; and (c) that he was performing his duties as mayor of Stevens Point in a ridiculous, foolish, and silly manner and was a subject of ridicule and contempt.

The defendant contended that the article was not subject to such construction. The jury found that it was, the trial court expressed his approval of the findings, and we are of the opinion that the article is more than susceptible to such construction. The contention of the defendant that the article was justified in such respects by the facts is also negatived by the jury upon abundant proof. It is needless for us to say that so far as the article constitutes a reflection upon the plaintiff in his professional capacity, or accuses him of crime, it is libelous *per se* and, as seen, all available defenses thereto were repudiated by the jury.

The defendant urges that the circumstances gave rise to an occasion of conditional privilege, because the plaintiff is a public officer, and the article deals with his official acts. While it is true that plain speaking and severe and caustic comment may be indulged concerning the acts of a public officer, his election to office does not bare him to the shafts of falsehood and slander. His good name and his reputation in his profession and as a law-abiding citizen are protected after as well as before he took the oath of office. Conceding that the gist of the article deals with plaintiff's offi-

cial acts as mayor of Stevens Point, the gratuitous and unjust reference to his professional qualifications, and the insinuations that he assaulted an old man, were not germane to a discussion of his official conduct and are in no sense privileged. These were matters extraneous and unrelated to a discussion of his official conduct, evidently imported into the article in harmony with a general purpose to belittle and ridicule the plaintiff. The mere fact that the plaintiff held the office of mayor did not make him the defenseless subject of such defamations.

Is the article, so far as it relates specifically to plaintiff's official conduct, privileged? The jury found that a person of average comprehension, on reading the article, would have understood that it was therein stated and charged that plaintiff was performing his duties as mayor of Stevens Point in a ridiculous, foolish, and silly manner and was a subject of ridicule and contempt; that the article was not a fair comment on the acts of the plaintiff in such capacity; and that the defendant was not actuated by express malice in causing said article to be published. In some jurisdictions it is held that all matters, true or false, having a bearing on the fitness of a public officer or candidate for public office may be published, without liability, if it be shown that they were published without malice, in good faith, and in the honest belief that the facts stated were true. 17 Ruling Case Law, pp. 354, 355; *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281, 20 L. R. A. N. s. 361. Here the immunity is not so sweeping. While the citizen may speak plainly, indulge in extravagant expressions and caustic and severe comments, if the facts warrant, concerning the fitness, qualifications, and official conduct of men in whom he is interested as a citizen, he cannot do so in disregard of the facts. He cannot malign, falsify, insult, or hold up to public hatred, contempt, or ridicule unless his statements be warranted by the facts. *Buckstaff v. Viall,* 84 Wis. 129, 54 N. W. 111; *Buckstaff v. Hicks,* 94 Wis. 34, 68 N. W. 403;

Walters v. Sentinel Co. 168 Wis. 196.

*Arnold v. Ingram,* 51 Wis. 438, 138 N. W. 111; *Williams v. Hicks P. Co.* 159 Wis. 90, 150 N. W. 183; *Leuch v. Berger,* 161 Wis. 564, 155 N. W. 148; *Putnam v. Browne,* 162 Wis. 524, 155 N. W. 910. The jury having found that the article pictured the plaintiff as performing his duties as mayor in a ridiculous, foolish, and silly manner and as a subject of ridicule and contempt, and that the article, taken as a whole, was not a fair comment upon him in his official capacity, it is not the subject of conditional privilege, even though published without malice.

There is another reason why the article is not privileged. The Milwaukee Sentinel, in which the article appeared, is a metropolitan daily newspaper published in the city of Milwaukee and circulates not only throughout the state of Wisconsin but extensively outside of the state. An insignificant proportion of its circulation is within the city of Stevens Point, the only place where its readers had a legitimate interest in the official conduct of the mayor of that city. While this court has held that a county newspaper is privileged to discuss the qualifications of a candidate for county office, even though it has an incidental circulation outside of the county *(Arnold v. Ingram, supra; Putnam v. Browne, supra)*, and the same rule would apply of course to county officers, a different situation is presented where a metropolitan paper with a state-wide circulation discusses the official conduct of an officer of a municipality other than that in which the paper is published. This is especially true where an inconsequential proportion of its circulation is in such municipality. In such cases the great bulk of its readers have no direct or legitimate interest in the public conduct of the officer whose record is under discussion, and this is one of the fundamental principles upon which the doctrine of privilege rests. The general rule deducible from the authorities may be stated to be: If a newspaper, published primarily for a given constituency, such as county or state, church or lodge, have a small circulation outside such con-

stituency, it is not deprived of its privilege in the discussion of matters of concern to its constituency because of such incidental outside circulation. *Mertens v. Bee Pub. Co.* 5 Neb. (Unof.) 592, 99 N. W. 847; *Redgate v. Roush,* 61 Kan. 480, 59 Pac. 1050, 48 L. R. A. 236; *Shurtleff v. Stevens,* 51 Vt. 501, 31 Am. Rep. 698; *Hatch v. Lane,* 105 Mass. 394; *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281. For this additional reason the article was not conditionally privileged.

Defendant complains because the court admitted in evidence articles concerning plaintiff appearing in other issues of the Milwaukee Sentinel. The question of the express malice of the defendant was in issue at the trial. It is well settled that statements made by a defendant in an action for libel or slander at other times and upon other occasions are admissible as bearing upon the question of express malice. *Born v. Rosenow,* 84 Wis. 620, 54 N. W. 1089; *Earley v. Winn,* 129 Wis. 291, 109 N. W. 633; *State ex rel. Mengel v. Steber,* 154 Wis. 505, 143 N. W. 156. There was no error in the admission of the articles mentioned.

During the trial defendant called a witness who testified that the two men arrested at the time of the raid on the Soo Hotel, mentioned in the article, were discharged by the court upon their trial and that it was rumored in Stevens Point that the Soo Hotel affair was a frame-up to fool the mayor. The court then permitted the plaintiff to prove that these two men were acquitted as a result of perjured testimony, and that two witnesses who testified in that action on their behalf were subsequently convicted of perjury because of their testimony given in that case. Defendant assigns this as error. We do not see that any of this testimony was very material. If material at all, it was upon the question of express malice and as tending to show the good faith of the defendant in the publication of the article. The jury found in favor of the defendant on the question of malice, and as the testimony upon this subject, that of the plaintiff as well

as that of the defendant, could be material upon no other question, it seems clear that the defendant was not prejudiced by its admission.

The defendant further claims that the verdict, even as reduced by the court, is excessive. We do not think so. The article constituted a serious reflection upon the plaintiff in his professional and official capacities. The jury was warranted in assessing substantial damages. We regard $1,800, the amount to which the verdict was reduced by the court, as conservative.

*By the Court.*—Judgment affirmed.