## HARTMANN v. AMERICAN NEWS CO. et al.

### No. 1483.

District Court, W. D. Wisconsin.

Jan. 15, 1947.

Anna Mae Davis, of Madison, Wis., and Sigmund Goldstein, of New York City, for plaintiff.

H. H. Thomas and Thomas, Orr, Isaksen & Werner, all of Madison, Wis., and Cravath Swaine & Moore, of New York City, for American News Co.

Defendant Fenske did not enter his appearance.

DUFFY, District Judge.

The matter before the court is the motion of defendant The American News Company for a summary judgment dismissing the complaint. The pending action is one for libel, based upon printed matter and pictures appearing in the January 17, 1944, and the February 7, 1944, issues of "Life" magazine, which the defendants are alleged to have distributed in Wisconsin. The summons and complaint were served on defendant The American News Company on January 5, 1946. The other defendant was not served nor did he enter his appearance herein. The word "defendant" hereinafter will refer only to The American News Company.

Plaintiff is a resident of New York. Defendant is a distributor of "Life" magazine and other publications, doing business in all 48 States, and supplying periodicals to over 90,000 retail news dealers and other retail outlets.

"Life" magazine is and during the year 1944 was a weekly publication released for public sale on Friday of each week. The contents of each issue of "Life" are prepared in New York by the editorial staff of Time, Inc., a New York corporation. The copy thus prepared is thereafter transmitted to R. R. Donnelly and Sons Company, a printing concern at Chicago, which prepares the plates from which each issue of "Life" is printed. One set of plates is then sent to Cuneo Eastern Press at Philadelphia; the other set of plates is retained and used by R. R. Donnelly and Sons Company to print the balance of the issues, as the printer of "Life" for the western area of the United States. The printing of each issue is performed under the general supervision of Time, Inc. Donnelly and Cuneo send out copies of "Life" to mail subscribers, and place on trains and trucks

at Chicago and Philadelphia the copies of the magazine to be distributed by various news distributors, including the defendant.

"Life" magazine always bears the date of the Monday following the day of its release. The various issues to be distributed in Wisconsin are and were received by defendant in wrapped bundles directly from R. R. Donnelly and Sons in Chicago. Defendant begins to receive copies of "Life" on the Wednesday morning preceding each issue date and continues to receive copies until the Thursday night preceding said issue date. Bundles of "Life" magazine, sometimes wrapped with other publications, are shipped out by defendant so as to insure receipt by various news dealers by Friday morning at the latest.

Defendant purchased and received from Time, Inc. 1,920,768 copies of the January 17, 1944, issue of "Life," of which 1,619,049 copies were delivered to defendant in Chicago, the balance being delivered in Philadelphia. Defendant received about the same number in the same proportion of the February 7, 1944, issue. The first copies of the two issues of "Life" here involved, delivered by Donnelly and Sons Company to defendant for distribution in Illinois and Wisconsin, were received by the branch office of defendant in Chicago, Illinois, prior to 7:00 A.M. on Wednesday, January 12, 1944, and 7:00 A.M. on Wednesday, February 2, 1944, respectively. At the latest the January 17, 1944, issue was in the hands of news dealers in Wisconsin on January 14, and the February 7 issue on February 4, 1944.

Defendant's officials made no attempt to examine the contents of the January 17 or the February 7, 1944, issues of "Life" before distributing same, and at the time the magazines were distributed none of them had personal knowledge of the matter contained therein of which the plaintiff complains.

Defendant moves, pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for summary judgment dismissing the complaint upon two grounds: (1) lack of knowledge on the part of the defendant of the existence of the alleged libelous articles and lack of any grounds for charging it with such knowledge; and (2) the action is barred by the Illinois Statute of Limitations, Chap. 83, Sec. 14, Ill.Revised Stats.; 19 Jones Ill.Stats.Ann. Par. 107.273, Sec. 13.

Defendant argues that it is impracticable for the officers or employees of defendant to read the issues of "Life" and other magazines prior to distribution, and that it is not the practice of any national magazine distributor to read each magazine or periodical sold by it to determine whether it contains defamatory material. Defendant argues that to make an independent check of each issue of each magazine handled would render timely distribution of magazines and periodicals an impossibility, and that the delays resulting from making such a check would be against the public interest.

Defendant also contends for the principle of one publication only, that is, that publication was in Illinois either when the proofs were read at the printing plant or, at the latest, when the issue first became available to the public. Defendant reasons that the cause of action must therefore have accrued in Illinois, and that the passing of one year under the Illinois statute of limitations extinguished both the right and the remedy, and that the cause of action could not be revived by bringing this action in Wisconsin, citing Eingartner v. Illinois Steel Co., 103 Wis. 373, 79 N.W. 433, 74 Am.St.Rep. 871; Banking Commission v. Buchanan, 227 Wis. 544, 279 N.W. 71.

Plaintiff's claim is based on the distribution by defendant in Wisconsin of the two issues of "Life" containing the offending articles. Whether defendant committed an actionable wrong is a matter of Wisconsin law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188, 114 A.L.R. 1487; Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, 160 A.L.R. 1231.

The complaint alleges that the plaintiff was a professor of educational psychology at Columbia University; that the January 17, 1944, issue contained a picture of plaintiff with the caption directly over it, "U. S. Indicts Fascists (Continued)"; that on the pages immediately preceding the one containing plaintiff's picture an article

was printed based on the book, "Under Cover," together with pictures of numerous alleged facists who had been indicted; that in the text on the same page accompanying plaintiff's picture and others, plaintiff was described as chairman of a movement "to prevent U. S. victory." The complaint further alleges that in the February 7, 1944, issue of "Life" it was admitted that plaintiff had not been indicted as a fascist, but that he was nevertheless charged with being a leader of a "subversive movement."

It was stipulated that the heading, "U. S. Indicts Fascists (Continued)," appearing in the upper left-hand corner of page 18 of certain copies of the January 17, 1944, issue of "Life" was deleted from the plates used to print said issue at about 11:00 P. M. on January 11, 1944; that prior to said change approximately 1,300,000 copies had been printed in Chicago and approximately 250,000 copies at Philadelphia, which were later distributed. The complaint alleges the defendant had branches in Madison and other places in Wisconsin and that copies of the issues here involved were distributed throughout the State of Wisconsin.

Defendant contends that modern authorities stand for the proposition that where large distributions of an issue of a newspaper or periodical are involved there is only one publication of that paper or periodical. Some courts have adopted this rule of convenience. Hartmann v. Time, Inc., D.C., 64 F.Supp. 671; McGlue v. Weekly Publications, Inc., D.C., 63 F.Supp. 744; Cannon v. Time, Inc., D.C., 39 F. Supp. 660. Some authorities to the contrary are Albi v. Street & Smith Publications, Inc., 9 Cir., 140 F.2d 310; Holden v. American News Co., D.C., 52 F.Supp. 24; O'Reilly v. Curtis Pub. Co., D.C., 31 F.Supp. 364.

However, we are here required to apply Wisconsin law. In Street v. Johnson, 80 Wis. 455, 50 N.W. 395, 14 L.R.A. 203, 27 Am.St.Rep. 42, the defendant was an owner of a news stand and a vendor of newspapers in the city of Superior. The court there stated, (80 Wis. at page 458, 50 N.W. at page 395): " * * * The authorities are to the effect that the mere seller of newspapers is not liable for selling and delivering a newspaper containing a libel upon the plaintiff if he can prove upon the trial to the satisfaction of the jury that he did not know that the paper contained a libel; that his ignorance was not due to any negligence on his part; and that he did not know, and had no ground for supposing, that the paper was likely to contain libelous matter. * * *" That court also stated (80 Wis. at page 458, 50 N.W. at page 396): " * * * It is stated as elementary law that 'every sale and delivery of a written or printed copy of a libel is a fresh publication; and every person who sells or gives away a written or printed copy of a libel may be made a defendant, unless, indeed, he can satisfy the jury that he was ignorant of the contents. The onus of proving this lies on the defendant.' * * *."

Recognizing the rule announced in Street v. Johnson, supra, as contra to its contentions herein, defendant argues that the later cases of Flynn v. Western Union Telegraph Co., 199 Wis. 124, 225 N.W. 742, and Lehner v. Associated Press, 215 Wis. 254, 254 N.W. 664, although not expressly overruling Street v. Johnson, do throw doubt that that decision states the law of Wisconsin today. Defendant contends that the old common law rule announced in that decision is now obsolete.

I feel compelled to follow the legal principles laid down in Street v. Johnson, supra. I am not at all certain that the present Supreme Court of Wisconsin would change the rule there stated. If there were only one legal publication of a newspaper or magazine printed in Illinois, as the defendant contends, such papers and magazines would have a distinct advantage and favorable position over those published in Wisconsin if a libelous statement happened to be contained therein. If defendant's contention is sound the question arises whether Wisconsin residents would have to travel to Illinois in order to bring suit if the tort were committed in that State. Then too, under defendant's version, if a person desired to libel a Wisconsin citizen he could print a pamphlet in Chicago, make a limited disclosure to the public, and then withhold general circulation thereof for a year; thereafter he could with im-

punity flood the State with the defamatory material and the Wisconsin citizen would be helpless because the Illinois statute of limitations had extinguished his right of action. One might also conjecture about the situation if Illinois should abolish actions for libel. While this may seem far-fetched, that State did attempt legislatively to abolish actions for breach of promise.

■ In this case plaintiff was accused of having been indicted by the United States government. Published printed matter which imputes the commission of a crime by an individual is libelous per se. Walters v. Sentinel Company, 168 Wis. 196, 169 N.W. 564; Leuch v. Berger, 161 Wis. 564, 155 N.W. 148.

■ While on the showing made defendant's officers and employees did not actually know of the offending articles, the question remains whether the defendant was negligent in not so knowing. In defendant's brief it states: "Upon the depositions and affidavits before the court, it has been established that American News had no actual knowledge of any of the contents of the issues of "Life" in question. * * * There remains to consider whether American News was negligent in its failure to know of the articles in question. * * *" But the very question of whether the defendant was negligent under the rule announced in Wisconsin is a question for the jury and precludes the granting of the motion for summary judgment.