Allan D. "Rick" ZINDA, Plaintiff-Respondent-Cross Appellant-Petitioner,

v.

LOUISIANA PACIFIC CORPORATION and Hartford Accident & Indemnity Co., a foreign insurance corporation, Defendants-Appellants-Cross Respondents-Cross Petitioners.

Supreme Court

*No. 86-0737. Argued October 4, 1988.—Decided May 31, 1989.*

(Also reported in 440 N.W.2d 548.)

914

For the plaintiff-respondent-cross appellant-petitioner there were briefs filed by *Maria Wyant Cuzzo* and *Witkin, Weiby, Maki, Durst & Ledin, S.C.,* Superior, and oral argument by *Ms. Cuzzo.*

For the defendants-appellants-cross respondents-cross petitioners there were briefs by *James R. Scott* and *Linder & Marsack, S.C.,* Milwaukee, and oral argument by *Mr. Scott.*

WILLIAM A. BABLITCH, J.   Allan D. "Rick" Zinda (Zinda) brought both a defamation and invasion of privacy action against his former employer, Louisiana Pacific Corporation (Louisiana Pacific), based on a statement concerning his discharge which was published in a company newsletter. The primary issues on review are whether Zinda established a prima facie claim of invasion of privacy, whether Louisiana Pacific's publication was conditionally privileged as to both actions, and if so whether the privilege was abused as a matter of law. Other issues concern whether the jury was improperly instructed regarding damages, and whether the damage award was excessive.

We conclude that Zinda established a prima facie claim of invasion of privacy. However, we also conclude that with respect to both the defamation and the invasion of privacy claims, Louisiana Pacific's publication was conditionally privileged and that a jury question was presented as to whether the privilege was abused. Finally, we conclude that the issue of damages must be retried. Accordingly, the decision of the court

of appeals is affirmed in part, reversed in part, and remanded for a new trial.

The essential facts are undisputed. Approximately two years prior to his employment with Louisiana Pacific, Zinda was injured as a result of falling through "waferboard" on the roof of a garage he was constructing at his home. Zinda sustained numerous injuries, including a broken rib, a broken bone in the back, and a broken heel.

In connection with his application for employment with Louisiana Pacific in 1983, Zinda completed a standard application form as well as a medical history form. In the "personal health history" portion of the medical form, Zinda provided the following answers:

Upper Back Trouble—No.

Middle Back Trouble—No.

Low Back Trouble—No.

Back Injury or Disability—No.

Fracture or Broken Bone—No.

Back X-ray—No.

In explaining a "yes" answer regarding previous hospitalizations and surgery, Zinda wrote: "[W]hen I was 15 years old for Hay Fever, Tonsil, Appendits [sic], and fall off roof." Later, during a pre-employment interview, Zinda clarified that he had previously fallen off a roof and broken some bones including his ribs and a heel, but that he had no present problems. Zinda signed both forms acknowledging that all answers were true and that any false statements or misrepresentations would result in immediate discharge, regardless of when such facts were discovered.

Approximately one year later, Zinda filed a products liability action against Louisiana Pacific, alleging

that it negligently manufactured the "waferboard" involved in his fall off the roof. The complaint asserted that Zinda had suffered permanent disabilities as a result of the injuries, and sought substantial compensatory and punitive damages.

The complaint was served on the personnel manager of the Louisiana Pacific plant who compared the allegations against the answers Zinda gave on his application forms. Apparently concluding that Zinda had intentionally withheld adverse information concerning his physical condition, the personnel manager notified Zinda that his employment was suspended pending an investigation into possible fraud regarding his employment forms. Approximately three weeks later, Louisiana Pacific terminated Zinda's employment.

Subsequently, Louisiana Pacific published a notice regarding Zinda's termination on the seventh page of the plant newspaper, the "Waferboard Press," under the following heading:

COMINGS AND GOINGS

| 5/1/84 | Death | Leland Thysen | |
|--------|-------|---------------|---|
| 5/10/84 | Voluntary Quit | Jeff Aiken | Back to Railroad |
| 5/14/84 | Hire | Paul Lueck | Electrician |
| 5/25/84 | Terminate | Al Christner | Falsification of Emp. forms |
| 5/27/84 | Hire | Bill Nordback | A crew |
| 5/29/84 | Hire | Dennis Voight | B crew |
| 5/29/84 | Terminate | Larry Radzak | Theft |
| 5/29/84 | Terminate | Al Zinda | Falsification of Emp. forms |
| 5/31/84 | Hire | Mike Hoskins | Panel Saw |
| 5/31/84 | Voluntary Quit | Mike Laronge | Personal reasons |
| 5/31/84 | Hire | Jeff Walker | C crew |

Approximately 160 copies of the newsletter were distributed to employees by placement in the lunchroom. Employees were not restricted from taking the newsletter home, and employees regularly took the newsletters out of the workplace. Testimony indicates that a copy reached the local hospital, where Zinda's wife worked, and two of her co-workers read the reference to Zinda's termination.

Zinda amended his complaint to include allegations of defamation, invasion of privacy, and wrongful discharge. Louisiana Pacific answered, raising conditional privilege as a defense, asserting that it had no liability for good faith communications to employees concerning the reasons for the discharge of another employee.

The circuit court granted summary judgment dismissing Zinda's claim for wrongful discharge. Zinda then voluntarily dismissed the products liability claim. The defamation and invasion of privacy claims were tried to a jury. Prior to submission of the case to the jury, however, the trial court concluded that express malice had not been proven, and refused to submit the question of punitive damages. The jury was instructed that in assessing damages it could consider the refusal of Louisiana Pacific to retract the statement. Regarding the defamation and invasion of privacy claims, the trial court refused without explanation to submit Louisiana Pacific's requested instruction on conditional privilege.

The jury returned a verdict awarding $50,000.00 for defamation as well as $50,000.00 for invasion of privacy. The trial court denied all post verdict motions and granted judgment on the verdict.

Louisiana Pacific appealed, arguing that it was entitled to the instruction on conditional privilege. It also insisted that the damages were excessive. Zinda

cross-appealed, arguing that the trial court erred in dismissing his wrongful discharge claim, and refusing to submit punitive damages to the jury.

The court of appeals declined to address the question of whether the publication was conditionally privileged, concluding that any privilege which may have existed was abused as a matter of law by excessive publication. The court of appeals also concluded that sufficient credible evidence supported the award for invasion of privacy. However, the court of appeals reversed and remanded for a new trial on damages. The court concluded that the awards could not be supported by the record. The court noted there was no evidence indicating that Zinda's reputation had suffered. In fact, the sole inquiry into reputation during the entire course of the trial was a question put to each of the two nurses who worked with Zinda's wife at the local hospital and saw the newsletter. Both denied having any negative feelings toward Zinda as a result of the statement, and one stated that she had never met Zinda prior to trial. Furthermore, the testimony from Zinda and his wife was brief and conclusory regarding his alleged embarrassment and humiliation.

The court of appeals also concluded that the trial court had erred by instructing the jury that in assessing damages it could consider the refusal of Louisiana Pacific to retract the statement. Finally, the court of appeals refused to consider Zinda's cross-appeal. The court concluded that Zinda waived the issues involving wrongful discharge and punitive damages by failing to raise the alleged errors in postverdict motions.

Zinda now seeks review of the damage issue only. Zinda argues that the court of appeals improperly substituted its judgment for that of the jury, and speculated as to what was in the jury's mind when it

awarded damages. Zinda contends that the record contains sufficient credible evidence to sustain the jury's awards.

Louisiana Pacific seeks cross-review of the liability portion of the decision, insisting that it published the newsletter on an occasion of conditional privilege, and that it did not abuse the privilege as a matter of law. Louisiana Pacific also argues that no credible evidence supported Zinda's invasion of privacy claim.

## I.

We turn first to the issue of liability for defamation. We conclude that the information published in the company newsletter was conditionally privileged as a communication of common interest concerning the employer-employee relationship. We further conclude that although the privilege may be lost if abused, a jury question was presented in this case as to whether the information was excessively published.

A communication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him. *Converters Equipment Corp. v. Condes Corp.,* 80 Wis. 2d 257, 262, 258 N.W.2d 712 (1977). If the statements are capable of a nondefamatory as well as a defamatory meaning, then a jury question is presented as to how the statement was understood by its recipients. *Wozniak v. Local 1111 of UE,* 57 Wis. 2d 725, 732, 205 N.W.2d 369, 373 (1973).

However, not all defamations are actionable. Some defamations fall within a class of conduct which the law terms privileged. The defense of privilege has developed under the public policy that certain conduct which

would otherwise be actionable may escape liability because the defendant is acting in furtherance of some interest of societal importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff. *See generally* Prosser and Keeton on Torts, sec. 114, p. 815–16 (5th Ed. 1984).

■

Privileged defamations may be either absolute or conditional. *See Lathan v. Journal Co.,* 30 Wis. 2d 146, 151–52, 140 N.W.2d 417 (1966). Absolute privileges give complete protection without any inquiry into the defendant's motives. This privilege has been extended to judicial officers, legislative proceedings, and to certain governmental executive officers. *See* Prosser and Keeton at sec. 114.

The arguments in this case, however, are concerned only with conditional privilege. In the area of conditional privilege, we have endorsed the language of the Restatement of Torts. *See Converters Equipment,* 80 Wis. 2d at 264. The Restatement recognizes the existence of a conditional privilege in a number of different situations. Among these are statements made on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest.

Section 596 of the Restatement 2d of Torts defines the "common interest" privilege:

> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

The common interest privilege is based on the policy that one is entitled to learn from his associates what is being done in a matter in which he or she has an interest in common. Thus, defamatory statements are privileged which are made in furtherance of common property, business, or professional interests. The Restatement extends such privilege to "partners, fellow officers of a corporation for profit, fellow shareholders, and fellow servants. ..." *See Id.,* Comment d. at 597.

The common interest privilege is particularly germane to the employer-employee relationship. We have applied a conditional privilege to various communications between employers and persons having a common interest in the employee's conduct. For instance, in *Hett v. Ploetz,* 20 Wis. 2d 55, 59–62, 121 N.W.2d 270 (1963), a defamatory letter of reference from an ex-employer to a prospective employer was held to be entitled to a conditional privilege. We stated that the prospective employer has an interest in receiving information concerning the character and qualifications of the former employee, and the ex-employer has an interest in giving such information in good faith to insure that he may receive an honest evaluation when he hires new employees. *Id.; see also Calero v. Del Chemical Corp.,* 68 Wis. 2d 487, 498, 228 N.W.2d 737 (1975); Prosser and Keeton, sec. 115 at 825.

Similarly, in *Johnson v. Rudolph Wurlitzer Co.,* 197 Wis. 432, 440, 222 N.W. 451, 454 (1928), we held that a conditional privilege applied to defamatory statements by a store manager to other employees in the office about an alleged embezzlement involving a fellow employee. We stated that because of their employment, the employees had a common interest in discovering the source of the shortage that was being investigated.

We conclude that the common interest privilege attaches to the employer-employee relationship in this case. Employees have a legitimate interest in knowing the reasons a fellow employee was discharged. Conversely, an employer has an interest in maintaining morale and quieting rumors which may disrupt business. Here, Louisiana Pacific's personnel manager testified that at the time of Zinda's termination, the plant had been going through a rather extensive retooling and reprocessing. During that time, normal crews had been broken apart and there were prevailing rumors that Louisiana Pacific was laying off employees. The company believed for this reason that it would be the best policy to immediately suppress rumors by being completely honest concerning employees who were no longer with the company.

Moreover, we conclude that truthfulness and integrity in the employment application process is an important common interest. An employer who asks questions such as those involved here is entitled to receive an honest answer, and reasonable communication in a plant newsletter concerning terminations for misrepresentations discourages other employees from engaging in similar conduct. In addition, the employees have an interest in knowing how the rules are enforced, and the type of conduct that may result in their discharge from employment. Accordingly, Louisiana Pacific's communication to its employees concerning Zinda's discharge was entitled to a conditional privilege.

However, conditional privilege is not absolute and may be forfeited if the privilege is abused. *Ranous v. Hughes,* 30 Wis. 2d 452, 467, 141 N.W.2d 251 (1966). The Restatement 2d of Torts lists five conditions which

may constitute an abuse of the privilege, and the occurrence of any one causes the loss of the privilege. The privilege may be abused: (1) because of the defendant's knowledge or reckless disregard as to the falsity of the defamatory matter (*see* secs. 600–602); (2) because the defamatory matter is published for some purpose other than that for which the particular privilege is given (*see* sec. 603); (3) because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege (*see* sec. 604); (4) because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged (*see* sec. 605); or (5) the publication includes unprivileged matter as well as privileged matter (*see* sec. 605A).[1]

Zinda insists that any privilege which may have existed in this case was abused as a matter of law by excessive publication under condition (3). Essentially, Zinda argues that Louisiana Pacific made no attempt to restrict the publication to persons with a common interest in his termination. Zinda alludes to testimony elicited on cross-examination which purportedly indicates that the personnel manager had knowledge that employees routinely took the newsletters home. Furthermore, Zinda asserts that the content of the newsletter encouraged its removal from the plant.

---

[1]In *Ranous,* 30 Wis. 2d at 468, we listed four conditions which constituted an abuse of conditional privilege under the Restatement rules. Since that time, the Restatement has changed the wording of the first abuse of privilege under sec. 600. In addition, the Restatement 2d of Torts added the fifth rule constituting an abuse of conditional privilege. *See* Restatement 2d, Torts Appendix, sec. 605, p. 117, Reporter's Note.

We disagree that Louisiana Pacific abused its privilege as a matter of law. The question whether a conditional privilege has been abused is a factual question for the jury, unless the facts are such that only one conclusion can be reasonably drawn. Restatement 2d, Torts, sec. 619(2), Comment b. at 316.

Contrary to Zinda's insistence, the evidence alluded to does not necessarily lead to the conclusion that Louisiana Pacific excessively published the statement concerning Zinda's discharge. Once it is determined by the court that the defamatory communication was made on an occasion of conditional privilege, the burden shifts to the plaintiff to affirmatively prove abuse. *See Calero,* 68 Wis. 2d at 499. Here, despite allegations of widespread distribution throughout the community, Zinda's proof at trial was limited to the testimony of two unprivileged women who read the reference to Zinda's termination at the hospital where his wife worked.

An employer is entitled to use a method of publication that involves an incidental communication to persons not within the scope of the privilege. *See Walters v. Sentinel Co.,* 168 Wis. 196, 203–04, 169 N.W. 564 (1918); Restatement 2d, Torts, sec. 604, Comment a. at 292. Often the only practical means of communicating defamatory information involves a probability or even a certainty that it will reach persons whose knowledge of it is of no value in accomplishing the purpose for which the privilege is given. In *Walters* this court stated that if "a newspaper, published primarily for a given constituency, such as county or state, church or lodge, have a small circulation outside such constitu-

ency, it is not deprived of its privilege in the discussion of matters of concern to its constituency because of such incidental outside circulation." *Id.,* 168 Wis. at 203-04; *accord,* Restatement 2d, Torts, sec. 604, Comment b. at 293.

As previously discussed, Louisiana Pacific had an interest in informing each and every one of its employees about the subject of Zinda's discharge.[2] We cannot as a matter of law consider the communication in this case an unreasonable means to accomplish this purpose. Testimony indicates that the company attempted to correlate the number of copies printed to the number of employees in the plant. These copies were circulated only in the lunchroom, over the course of several days, so that every workshift would have an opportunity to read the newsletter. Thus, despite the company's alleged knowledge that employees often took the newsletter home, a jury could conclude that the great bulk of its readers had a direct and legitimate interest in the information regarding Zinda's termination, and that the outside communication was reasonably believed to be necessary to communicate the privileged information. Accordingly, the privilege was not abused as a matter of law, and it was error to refuse the requested instruction.

---

[2]To the extent that Zinda implies that the allegedly defamatory matter was indiscriminately taken home by the employees and communicated to various family members, we agree with courts of other jurisdictions which have held that defamatory communications made to family members are ordinarily subject to a conditional privilege. *See, e.g., Kroger Company v. Young,* 172 S.E.2d 720, 723 (Va. 1970).

## II.

We turn now to the issue of liability regarding Zinda's claim for invasion of privacy. We conclude that although credible evidence otherwise supported Zinda's claim, the right of privacy statute also includes the defense of conditional privilege. The burden rests with Zinda to prove the abuse of that privilege.

The right of privacy doctrine emanated primarily from an article written by Louis B. Brandeis and his former law partner, Samuel D. Warren, advocating "the right to be let alone." *See* Warren & Brandeis, *The Right to Privacy,* 4 Harv. L. Rev. 193 (1890). Prior to the publication of this article, no states had enacted a statutory right to privacy nor had any courts granted relief expressly based on a violation of such right. However, subsequent judicial decisions and legislative enactments have widely recognized the right of an individual to be free from unreasonable interference by others in matters of which they are not concerned. *See* Prosser, *Privacy,* 48 Calif. L. Rev. 383, 384–88 (1960).

Prosser stated that there are four separate types of invasion of privacy: (1) appropriation of the plaintiff's name or likeness for the defendant's advantage; (2) intrusion upon the plaintiff's seclusion or solitude, or into his or her private affairs; (3) public disclosure of private facts; and (4) publicity which places the plaintiff in a false light in the public eye. *Id.* at 389. This analysis was incorporated into the Restatement 2d of Torts, secs. 652A–652I.

In 1977, the legislature enacted sec. 895.50, Stats., creating for the first time a cause of action in Wisconsin for invasion of privacy. Section 895.50 provides three separate torts which correlate to a limited degree with the four categories identified by Prosser and the

Restatement. Section 895.50 differs primarily in that it does not provide a cause of action for placing a person in a false light in the public eye. *See* comment, 66 Marq. L. Rev. 99, 102–04 (1982).

Zinda claims that Louisiana Pacific invaded his privacy under the third category, sec. 895.50(2)(c), Stats., unreasonable publicity given to the private life of another:

> (c)   Publicity given to a matter concerning the private life of another, of a kind highly offensive to a reasonable person, if the defendant has acted either unreasonably or recklessly as to whether there was a legitimate public interest in the matter involved, or with actual knowledge that none existed. It is not an invasion of privacy to communicate any information available to the public as a matter of public record.

We discern four elements which a plaintiff must prove in order to establish a cause of action for public disclosure of private facts under sec. 895.50(2)(c), Stats.

The first element under sec. 895.50(2)(c), Stats., requires a public disclosure of facts regarding the plaintiff. In other words, there must be "publicity," which means that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Restatement 2d, Torts, sec. 652D, Comment a. at 384. It has been stated that a publication in a newspaper, even of a small circulation, may be sufficient to give publicity within the meaning of the term. *Id.*

Second, the facts disclosed must be private facts. Each individual has some phases of his or her life which they do not expose to the public eye, but keep entirely to themselves or at most reveal only to family

or close personal friends. However, the statute imposes no liability for publicity given to information that is already available to the public as a matter of public record. *See also Newspapers, Inc. v. Breier,* 89 Wis. 2d 417, 431–32, 279 N.W.2d 179 (1979). Nor can one complain when publicity is given to matters which a person leaves open to the public eye. The law is not for the protection of the hypersensitive, and all of us must to some extent lead lives exposed to the public gaze. Prosser and Keeton, sec. 117 at 857.

Third, the private matter made public must be one which would be highly offensive to a reasonable person of ordinary sensibilities. In this regard, the statute must be interpreted relative to the customs of the time and place, to the occupation of the plaintiff, and to the habits of neighbors and fellow citizens. Restatement 2d, Torts, sec. 652D, sec. c at 387. It is only when the publicity given is such that a reasonable person would feel justified in feeling seriously aggrieved by it that a cause of action arises. *Id.*

Fourth, the defendant must act either unreasonably or recklessly as to whether there was a legitimate public interest in the matter, or with actual knowledge that none existed.

Applying the above elements to the present case, we conclude that Zinda established a prima facie claim. By virtue of its newsletter, Louisiana Pacific communicated the fact and reason for Zinda's termination to a substantial audience. Furthermore, a jury could conclude that the facts disclosed were private and highly offensive. Evidence was also produced from which a jury could conclude that Louisiana Pacific unreasonably or recklessly disregarded whether there was a legitimate public interest in the statement.

930

Nevertheless, sec. 895.50(3), Stats., provides that Wisconsin's right of privacy statute "shall be interpreted in accordance with the developing common law of privacy, including defenses of absolute and conditional privilege. ..." The circumstances which gave rise to the conditional privilege for Zinda's defamation claim therefore also produced a conditional privilege for the alleged invasion of privacy. *See Id;* Restatement 2d, Torts, sec. 652G at 401.

That being the case, Zinda is entitled to recover only upon a showing that Louisiana Pacific abused its privilege. We conclude that Zinda's proof at trial does not demonstrate an abuse of the privilege as a matter of law, but is rather a question of fact to be determined by the jury.

As mentioned, the employees had a proper interest in being informed of Zinda's discharge, and were therefore not in a category with the general public which cannot have a legitimate interest in matters between an employer and its employees. Moreover, although the statement was published in a newsletter, the "Waferboard Press" was published for a given constituency and never intended to be a vehicle of communication to the public at large. The invasion of privacy statute renders actionable only unreasonably intrusive disclosures to the general public.

Zinda insists that Louisiana Pacific's interests in communicating the matter to its employees could easily have been met by other means. Accepting the truth of this assertion for the sake of argument, it does not necessarily follow that the means utilized by the company were therefore unreasonable. We reiterate that Louisiana Pacific attempted to correlate the number of copies printed to the number of employees and these copies were only distributed in the lunchroom. Further-

more, the evidence at trial demonstrated that it was customary at Louisiana Pacific to publish in its newsletter the "comings and goings" of both new and former employees. The publication of information concerning an employee's termination was therefore not a unique event, and a jury question was presented whether the means utilized by Louisiana Pacific in this case were reasonably believed to be necessary to accomplish its interests.

Accordingly, we reverse the decision of the court of appeals on the issue of liability and remand for a new trial concerning both the defamation and the invasion of privacy claims. On retrial, the trial court should instruct the jury that Louisiana Pacific's newsletter was issued on an occasion of conditional privilege. The court should then instruct the jury that liability on either claim cannot be established without proof of the abuse of the conditional privilege. The issues concerning wrongful discharge and punitive damages, for which Zinda did not seek review, are the law of the case and entirely separable from the issues requiring a new trial.

Regarding the issue of damages, we agree with the court of appeals that the trial court erred by instructing the jury that in assessing damages it could consider the refusal of Louisiana Pacific to retract the statement. Because the trial court dismissed Zinda's claims based on express malice, it was improper to inject Louisiana Pacific's motives into the compensatory damages award. By virtue of the instruction, the jury was erroneously allowed to take the summary nature of Zinda's dismissal and the alleged retaliatory motive into account despite the fact that the wrongful discharge and punitive damage claims had been dis-

missed. Therefore, the issue of damages must also be retried. In light of this conclusion it is not necessary that we consider other alleged errors concerning whether the amount of the verdict was excessive.

  *By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and remanded.