Henry POSYNIAK, Plaintiff-Appellant,†

v.

The SCHOOL SISTERS OF ST. FRANCIS OF ST. JOSEPH'S CONVENT, Catholic Health Corporation and Villa Clement, Inc., Defendants-Respondents. ††

Court of Appeals

*No. 91–2441. Submitted on briefs January 6, 1993.—Decided December 7, 1993.*

(Also reported in 511 N.W.2d 300.)

†Petition to review denied.
††Petition to cross review denied.

619

620

For the plaintiff-appellant the cause was submitted on the briefs of *Phil Elliott, Jr.*, of counsel, of West Allis.

For the defendant-respondent, the School Sisters of St. Francis of St. Joseph's Convent, and defendant Villa Clement, Inc., the cause was submitted on the briefs of *Daniel F. Miller* of *von Briesen & Purtell, S.C.*, of counsel, of Milwaukee.

For the defendant-respondent, Catholic Health Corporation, the cause was submitted on the briefs of *Christopher Lowe* of *Lowe Law Offices*, of counsel, of Milwaukee; and *Kirk S. Blecha & R. J. Stevenson* of *Baird, Holm, McEachen, Pedersen, Hamann & Strasheim*, of counsel, of Omaha, Nebraska.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J.    Henry Posyniak appeals from a judgment entered on September 13, 1991, dismissing his claims for defamation, separate claims for "damage to character and reputation," and claims for breach of contract against Villa Clement, Inc. ("Villa Clement"), the School Sisters of St. Francis of St. Joseph's Convent, Milwaukee, Wisconsin, Inc. ("School Sisters"), and Catholic Health Corporation ("Catholic Health"). We conclude that the trial court correctly dismissed all claims against School Sisters and Catholic Health, and the defamation and damage to character and reputation claims against Villa Clement. Because the trial court erred in dismissing Posyniak's breach of contract claim against Villa Clement, however, we reverse that

622

portion of the trial court order and remand for further proceedings.

## I.  FACTUAL BACKGROUND

For approximately twenty years, Henry Posyniak was the executive director of Villa Clement, a corporation that owned and operated the Villa Clement nursing home. As executive director, Posyniak was responsible for the day-to-day operations of the Villa Clement nursing home. At all times relevant to this case, School Sisters was the parent corporation of Villa Clement, and Catholic Health was a corporation providing consulting services to School Sisters and Villa Clement.

In 1988, differences developed between Posyniak and School Sisters. As a result, School Sisters engaged the services of Catholic Health in an effort to negotiate a termination agreement with Posyniak. By Catholic Health's letter to Posyniak, dated February 28, 1989, Villa Clement and Posyniak entered into a contract establishing the terms of his "resignation and retirement from all offices and positions . . . with Villa Clement, Inc." Catholic Health and School Sisters were also signatories to the termination agreement. Among the terms of the agreement was this provision:

> The School Sisters of St. Francis, Catholic Health Corporation, Villa Clement's Board of Directors and its senior management staff agree not to indicate/state openly any negative feeling or comments toward Henry Posyniak.

By his second amended complaint, dated May 7, 1991, Posyniak brought claims for breach of contract, damage to character and reputation, and defamation,

623

all stemming from numerous alleged communications.[1]

## A. Communications By Sally Hazel

Posyniak alleged that Sally Hazel, interim executive director of Villa Clement following his retirement, breached the termination agreement, damaged his character and reputation, and defamed him by communicating as follows:

1. Published and distributed a satirical poem to the staff members and senior management members of Villa Clement that "conveyed the implication that while [Posyniak] was executive director . . ., employees did not keep regular hours, budgets were 'lame', and there was a lack of accountability."

2. Accused Posyniak of "mismanagement of . . . corporation affairs at meetings at which members of the Board of Directors of Villa Clement . . . were present," and stated to a meeting of the Board that Posyniak " 'was guilty of mismanagement . . . [and] failed to maintain hours of work for key management staff.' "

3. Stated publicly at a meeting of the Board of Directors of the Wisconsin Association of Homes and Services for the Aging ("Wisconsin Association") (a board consisting of administrators from throughout the southeastern part of Wisconsin) to

---

[1] All the allegations in the "breach of contract" claim were incorporated in the "damage to character and reputation" and "defamation" claims. The defamation claim, however, re-ordered and re-worded the allegations, and added several more. We have drawn from all the allegations of all the claims to summarize and organize them in a way that most logically corresponds to our legal analysis.

which Posyniak had been elected as a member, that "[y]ou [Posyniak] are not representing Villa Clement at this meeting."

4. Stated at two meetings of the Wisconsin Association and at a regional meeting of health care administrators that "Villa Clement owed large amounts of sales tax in the approximate amount of $20,000 and that Henry Posyniak withheld these sums."

5. Conveyed the same allegation about the sales tax matter to the Villa Clement Board of Directors and management staff.

## B. Communications by Joan Carlson

Posyniak also alleged that Joan Carlson, chief executive director of Villa Clement, breached the termination agreement, damaged his character and reputation, and defamed him by communicating as follows:

1. "[C]onveyed information" to the Villa Clement Board of Directors and management staff that Posyniak "was to blame for a flood that took place in the residential portion of Villa Clement's premises," and that "this communication became knowledgeable among nursing home administrators ...."

2. Stated to the Villa Clement Board and management staff that "Posyniak is responsible for an operating deficit in the amount of $700,000.00."[2]

## C. Communications By Un-Named Persons

Posyniak also alleged that un-named persons breached the termination agreement, damaged his

---

[2] This allegation was contained only in the defamation claim.

character and reputation, and defamed him by communicating as follows:

> 1.  The management staff at Villa Clement published a program for Villa Clement's annual awards banquet that omitted Posyniak's name "as a 20-year service awards winner," distributed the program to hundreds of persons at the banquet, and did not invite him to attend the banquet.
>
> 2.  "Members of the staff" of School Sisters and Villa Clement, "through innuendo, . . . transmitted negative feelings [relative to Posyniak] to third parties."
>
> 3.  The human resources director of Catholic Health informed a Villa Clement staff member "that if [Posyniak] had not resigned he would have been fired."

Posyniak alleged that "all of the statements . . . were untrue." Further, Posyniak alleged that "the negative feelings expressed by the defendants . . . ultimately became known through the entire community of nursing home administrators and health care administrators and staff members in the State of Wisconsin, and as a result thereof [he] was unable to obtain consulting positions" and that Villa Clement "did not call upon [him] as a consultant . . . as called for in the Agreement and this fact became known throughout the nursing home and health care administrators throughout the area." Posyniak claimed that "his character and reputation in the nursing home and health care field was so irreparably damaged as to prevent him from obtaining consulting positions and employment with other health care facilities," resulting in damages of at least $40,000 per year for a period of at least five years.

The defendants moved for dismissal of Posyniak's claims under sec. 802.06, Stats., and the trial court treated their motions as motions for summary judgment. The trial court issued a written decision granting summary judgment to all defendants on all of Posyniak's claims. The trial court stated:

> Upon examination of the alleged defamatory statements, this court finds that as a matter of law a majority of those statements are not capable of conveying a defamatory meaning. However, the statement concerning Mr. Posyniak's withholding of sales tax attributable to Sally Hazel is possibly defamatory. However, she is not a named party to this action and there is no allegation that she is authorized or directed by Villa Clement to make such statements and therefore, this action shall be dismissed as to all defendants.[3]

## II. ANALYSIS

We review determinations of summary judgment applying the same standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The summary judgment methodology has been recited often. *See, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338-339, 294 N.W.2d 473, 476-477 (1980); *In re Cherokee Park Plat*, 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582-583 (Ct. App. 1983). "A motion for summary judgment should be granted if

---

[3] At an earlier proceeding, the trial court also had dismissed Posyniak's claim for reimbursement for certain expenses incurred in attending a conference as a member of the board of directors of the Wisconsin Association. However, Posyniak has not appealed from this order of dismissal and, therefore, the issue has been waived.

there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Thompson v. Threshermen's Mut. Ins. Co.*, 172 Wis. 2d 275, 280, 493 N.W.2d 734, 736 (Ct. App. 1992).

## A.  DEFAMATION

In reviewing a claim for defamation, a court typically might make an initial determination of whether an alleged communication was defamatory; that is, whether it "tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Zinda v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 921, 440 N.W.2d 548, 552 (1989). Because not all defamatory communications are actionable, however, that initial determination is not necessarily required.

A defamatory statement may be conditionally privileged if it is " 'made on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest.' " *Wildes v. Prime Mfg. Corp.*, 160 Wis. 2d 443, 449-450, 465 N.W.2d 835, 838 (Ct. App. 1991) (quoting *Zinda*, 149 Wis. 2d at 922, 440 N.W.2d at 552). If it is determined that the defamatory statement was conditionally privileged, the burden then shifts to the plaintiff to show that the conditional privilege was abused. *See Zinda*, 149 Wis. 2d at 926, 440 N.W.2d at 554. It follows, therefore, that if an alleged communication is conditionally privileged, and if the privilege has not been abused, then arguments about whether the communication is defamatory are academic. Regardless of whether the alleged communication is

defamatory, it could not support an action for defamation because of the privilege.

In this case, assuming *arguendo* that the alleged communications were defamatory, we conclude that they were conditionally privileged under the "common interest privilege." Because Posyniak failed to allege abuse of any privilege, we thus confine our defamation analysis to the conditional privilege issue.

In *Zinda*, the Wisconsin Supreme Court, relying on the Restatement (Second) of Torts (1976), defined and explained the rationale for the common interest privilege:

> Section 596 of the Restatement 2d of Torts defines the "common interest" privilege:
>
>> An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.
>
> The common interest privilege is based on the policy that one is entitled to learn from his associates what is being done in a matter in which he or she has an interest in common. Thus, defamatory statements are privileged which are made in furtherance of . . . common business, or professional interests.
>
> . . . .
> The common interest privilege is particularly germane to the employer-employee relationship.

*Id.* at 922-923, 440 N.W.2d at 552 (citation omitted).

*Zinda* applied the common interest conditional privilege to an alleged defamatory publication of

629

Zinda's employer's plant newspaper that disclosed that *Zinda* had been discharged for falsification of employment application forms. The court reasoned that because the other employees had "a legitimate interest in knowing the reasons a fellow employee was discharged," and because "an employer has an interest in maintaining morale and quieting rumors which may disrupt business," the publication was conditionally privileged. *Id.* at 924, 440 N.W.2d at 553.

Here, although Posyniak's circumstances involved forced retirement rather than termination of employment, Villa Clement's employees also had a legitimate interest in knowing the reasons for retirement, and Villa Clement had a legitimate interest in maintaining morale and quieting rumors regarding Posyniak's status. Everyday work-place experience and expectations, on which the common interest privilege is based, would produce essentially the same "legitimate interest" of other employees in Posyniak's departure, whether caused by termination or controversial retirement. Likewise, the retirement of its executive director would logically lead Villa Clement staff "reasonably to believe" that co-workers have a "common interest" and are "entitled to know" the circumstances surrounding Posyniak's retirement. *See id.* at 922, 440 N.W.2d at 552. Therefore, we conclude that all the alleged communications from Sally Hazel, Joan Carlson, and unnamed persons to the Board of Directors, management, and staff of Villa Clement were conditionally privileged, by virtue of their common interest.

In addition to the alleged defamatory communications to the Board, management, and staff of Villa Clement, Posyniak alleged that Hazel made the following two defamatory statements at meetings of the Wisconsin Association, an organization that included

nursing home administrators unaffiliated with Villa Clement: (1) "You are not representing Villa Clement at this meeting," apparently referring to Posyniak's authority to participate on behalf of Villa Clement on the Wisconsin Association board; and (2) "Villa Clement owed large amounts of sales tax in the approximate amount of $20,000 and that Henry Posyniak withheld these sums," apparently referring to some of the alleged circumstances culminating in Posyniak's retirement. Additionally, Posyniak claimed that Hazel made the same statement about the sales taxes in another meeting of health care administrators.

The common interest conditional privilege is not limited to persons directly related by employment. Section 596 of the Restatement (Second) of Torts (1976), on which the supreme court relied in *Zinda*, provides that the common interest privilege exists:

> if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

Comments c - e to this section clarify why, absent abuse of the privilege, these communications to the Wisconsin Association and the regional meeting of health care administrators would come within the privilege:

> The rule is based on the fact that one is entitled to learn from his associates what is being done in a matter in which he has an interest in common with them. This interest in their common affairs entitles him to information as to how they are conducted, or to information that affects the common interest, even though he is not personally concerned with the information.

631

. . . .

. . . Persons associated together in professional activities are likewise within the rule stated in this Section.

. . . .

. . . The common interest of members of . . . associations . . . is recognized as sufficient to support a privilege for communications among themselves concerning the qualifications of the officers and members and their participation in the activities of the society. This is true whether the defamatory matter relates to alleged misconduct of some other member that makes him undesirable for continued membership, or the conduct of a prospective member. So too, the rule is applicable to communications between members and officers of the organization concerning the legitimate conduct of the activities for which it was organized.

Unquestionably, Hazel's statement that Posyniak was not representing Villa Clement at the board meeting of the Wisconsin Association was one "concerning the qualifications of the . . . members and their participation in the activities. . . ." Similarly, Hazel's statement regarding Posyniak and the sales taxes "relates to alleged misconduct of some other member that makes him undesirable for continued membership" and, presumably, given the names and apparent natures of the organizations and meetings, it also is a statement "concerning the legitimate conduct of the activities for which it was organized." Accordingly, we conclude that the statements Hazel allegedly made to the Wisconsin Association and the regional meeting of health care administrators also fell within the conditional privilege of common interest. Therefore, we conclude that all the statements were conditionally privileged.

Posyniak further argues on appeal that the common interest conditional privilege cannot apply to these communications because they occurred subsequent to the completion of his employment relationship with the defendants. We attach no significance to this fact. The common interest conditional privilege derives from the relationship between those who convey and receive the alleged defamatory communications. Thus, in applying the common interest conditional privilege in this case, we focus not on the relationship between Posyniak and the defendants, but rather, on the relationships among those who conveyed and received the alleged defamatory communications. Therefore, regardless of when the alleged defamatory statements were made, they fell within the common interest conditional privilege. Additionally, because Posyniak failed to argue in opposition to defendants' motion to dismiss/motion for summary judgment any abuse of the conditional privilege,[4] we uphold the trial court's summary judgment for all defendants on all the defamation claims.

---

[4] Although his second amended complaint asserted that "all of the statements . . . were untrue," Posyniak never alleged that the defendants had knowledge of or recklessly disregarded the alleged falsity of any of the communications. Never conceding that the conditional privilege of common interest applied to any of the alleged communications, Posyniak never suggested that the communications were made for purposes beyond the range of the privilege, or to persons not reasonably believed necessary for the accomplishment of the purpose of the privilege, or that the communications included unprivileged as well as privileged material. *See Zinda*, 149 Wis. 2d at 924-925, 440 N.W.2d at 553; *Wildes*, 160 Wis. 2d at 451-452, 465 N.W.2d at 839.

## B. DAMAGE TO CHARACTER AND REPUTATION

Posyniak's second amended complaint also alleged "damage to character and reputation," separate from his claim for defamation but based on substantially the same factual allegations as those underlying the defamation claim. In support of his argument that a separate cause of action exists, Posyniak points to sec. 893.53, Stats., which governs the statute of limitations for actions for "injury to character or other rights." We reject this argument.

Posyniak cannot plead a separate cause of action for "damage to character and reputation" above and beyond the defamation claim he already pled because a claim for defamation states a claim for "damage to character and reputation." *See Zinda*, 149 Wis. 2d at 921, 440 N.W.2d at 552 (claim for defamation stated where a communication "tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him"). In this case, where Posyniak's second amended complaint incorporated the same allegations in both causes of action, the trial court properly treated the two claims as one.

## C. BREACH OF CONTRACT

Posyniak also claimed that the alleged defamatory communications violated the contractual agreement of the defendants "not to indicate/state openly any negative feeling or comments toward Henry Posyniak."[5]

---

[5] School Sisters and Villa Clement argue that Posyniak waived the breach of contract claim "by continuing to accept the benefits of that contract without objecting" and by receiving all the benefits due him under the contract before making any

In his affidavit submitted in opposition to defendants' motion for summary judgment, Posyniak explained, "at the time of execution of this document I executed the same believing that no negative feelings would, in fact, be transmitted to third parties. . . ." Communications from Hazel, Carlson, and unnamed persons to the Board, management, and staff of Villa Clement were communications among the very parties to the termination agreement, not "to third parties." Consequently, even if these communications conveyed "negative feeling or comments," we conclude that they were not indicated or stated "openly" and, therefore, did not constitute a breach of contract. With this conclusion in mind, we turn to the breach of contract claim against each defendant.

**1. Catholic Health.** Posyniak's only allegation against Catholic Health specified that the human resources director of Catholic Health informed a Villa Clement staff member "that if [Posyniak] had not resigned he would have been fired." Because that alleged communication was to a Villa Clement staff member, it was not made "openly" and, therefore, summary judgment for Catholic Health on Posyniak's breach of contract claim was appropriate.

---

complaint. In support of their argument, they cite *Stevens Construction Corp. v. Carolina Corp.*, 63 Wis. 2d 342, 217 N.W.2d 291 (1974), and *Fisher v. Simon*, 15 Wis. 2d 207, 112 N.W.2d 705 (1961). These cases, however, considered construction contracts and the question of whether acceptance of a building without complaint, despite knowledge of construction defects, can waive subsequent claims under the contract. Appellants fail to explain how these cases, coming from completely different circumstances, are applicable here and, therefore, we address Posyniak's breach of contract claims.

**2. School Sisters.** Posyniak's second amended complaint alleged only one communication by School Sisters in violation of the contract. He claimed that "members of the staff" of School Sisters and Villa Clement, "through innuendo, . . . transmitted negative feelings [relative to Posyniak] to third parties." School Sister's denied Posyniak's allegation, and Posyniak failed to identify the employee, the date, time, place and substance of the "innuendo." Thus, Posyniak failed to submit any evidentiary facts to create a genuine material issue of disputed fact that would support School Sister's liability for breach of the termination contract. Additionally, however, Posyniak argues that all his allegations regarding Hazel, Carlson, and Villa Clement staff implicate School Sisters because of the legal relationship between Villa Clement and School Sisters. We do not agree. According to the uncontroverted affidavit of Elaine Pagliaro, president and a member of the Board of Directors of Villa Clement, School Sisters is the sole corporate member of Villa Clement pursuant to sec. 181.11, Stats. According to that affidavit, as well as Posyniak's second amended complaint, School Sisters and Villa Clement were two distinct corporations.

A corporation is a separate entity from its shareholders, and the general rule limiting shareholder liability will only be abrogated if applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim. *Consumer's Co-op of Walsworth v. Olsen*, 142 Wis. 2d 465, 474-75, 419 N.W.2d 211, 213-14 (1988). Thus, ordinarily, a stockholder is not liable on contracts entered into by a corporation, even where the

stockholder is the parent corporation and owns all the outstanding shares of the subsidiary that entered into the contract. *George A. Davis, Inc. v. Camp Trails Co.*, 447 F.Supp 1304, 1307 (E.D.Pa. 1978). Posyniak has offered no reason why we should depart from this general rule, and we can find no reason for doing so.

Posyniak argues, nonetheless, that because School Sisters was a signatory to the contract, it is liable for any breach. That might be so if Posyniak had established a genuine material issue of fact that the breach had been committed by a School Sisters employee. As noted, however, his allegation against an unidentified School Sisters employee failed to do so.

**3. Villa Clement.** Posyniak alleged that Hazel, interim executive director of Villa Clement, and Carlson, chief executive director of Villa Clement, breached the termination agreement by numerous communications. As we have explained, we conclude that summary judgment was appropriate for all such communications made to the Board, management, and staff of Villa Clement because such communications were not made "openly" to third parties.

In addition, Posyniak argues that Hazel breached the termination agreement with two alleged communications that were not to the Board, management, or staff of Villa Clement:

1.    Stating publicly before the board of directors of the Wisconsin Association that "[y]ou [Posyniak] are not representing Villa Clement at this meeting."

2.    Stating at two meetings of the Wisconsin Association and to a regional meeting of health care administrators that "Villa Clement owed large amounts of sales tax in the approximate amount of

637

$20,000 and that Henry Posyniak withheld these sums."

Here Posyniak alleged communications that were made "openly" — to persons outside the employment of Villa Clement, School Sisters, or Catholic Health. Clearly, an alleged assertion that "Villa Clement owed large amounts of sales tax in the approximate amount of $20,000 and that Henry Posyniak withheld the sums" could constitute "negative feeling or comments toward Henry Posyniak." Further, depending on the circumstances, the statement that "you are not representing Villa Clement at this meeting" could constitute "negative feeling or comments toward Henry Posyniak." Under the contractual terms, Posyniak could justifiably expect Villa Clement to refrain from making such comments.[6] Whether either or both of these alleged statements occurred or violated the contract are material factual issues for determination at trial and, therefore, we conclude that the trial court erred in granting summary judgment to Villa Clement on these two breach of contract claims.

[6] The trial court concluded that the sales tax comment "is possibly defamatory" but said that because Hazel "is not a named party to this action and there is no allegation that she is authorized or directed by Villa Clement to make such statements," even this alleged communication was not actionable. Given that the trial court's rationale could be equally applicable to the breach of contract claim that the trial court did not address, we note our disagreement with the trial court conclusion that, for Villa Clement to be liable, Hazel would have had to have been named as a party and authorized or directed by Villa Clement to make the statement. Clearly, as interim executive director of Villa Clement, Hazel's alleged comments implicated Villa Clement, a party to the agreement.

638

Accordingly, the summary judgments for Catholic Health and School Sisters are affirmed on all claims. The summary judgment for Villa Clement is affirmed on the defamation claim and on the claim for "damage to character and reputation." The summary judgment for Villa Clement on the breach of contract claim is affirmed in part regarding alleged communications to the Board, management, and staff of Villa Clement, and is reversed regarding the two alleged communications made by Hazel at the two Wisconsin Association meetings and the regional meeting of health care administrators.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.