Jan Riordan SHANNON and Timothy Riordan and their children, Kari Ann Hauser, Shannon L. Neuens, John Riordan, Paul Riordan, Nathaniel Riordan, Andrew Riordan, Megan Marie Riordan and Matthew Riordan, Plaintiffs-Appellants,

v.

The ALLIANCE FOR the MENTALLY ILL OF GREATER MILWAUKEE, William Otto, Board Members of AMI, Continental Casualty Company of Chicago, Archdiocese of Milwaukee, Father Michael Barrett and St. Casimir Parish, Catholic Mutual Relief Society and Patricia Flannery, Defendants-Respondents,

ST. FRANCIS HOME HEALTH SERVICES, Milwaukee County and Wisconsin Health Care Liability Insurance Plan, Defendants.

Court of Appeals

*No. 93–0545. Submitted on briefs March 1, 1994.—Decided November 1, 1994.*

(Also reported in 525 N.W.2d 299.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Law Office of Timothy Riordan*, with *Timothy Riordan* of Milwaukee.

For the defendants-respondents St. Casimir Parish, Father Michael Barrett, Archdiocese of Milwaukee and Catholic Mutual Relief Society the cause was submitted on the briefs of *Riordan, Crivello, Carlson, Mentkowski & Steeves, S.C.*, with *Frank L. Steeves*, and *Nick G. Kotsonis* of Milwaukee.

For the defendants-respondents The Alliance For The Mentally Ill of Greater Milwaukee, William Otto, Board Members of AMI and Continental Casualty Company the cause was submitted on the briefs of *Godfrey, Braun & Hayes*, with *W. Wayne Siesennop*, and *Marjorie M. Greene*, of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Jan Riordan Shannon and Timothy Riordan and their children (collectively, "Riordan") appeal from the trial court judgment granting summary judgment and dismissing their complaint against two groups of defendants: (1) the Alliance for the Mentally Ill of Greater Milwaukee (AMI), AMI's

19

director, William Otto, AMI's board members, and AMI's insurer, Continental Casualty Company of Milwaukee (collectively, the "Alliance"), and (2) the Archdiocese of Milwaukee, St. Casimir Parish, Father Michael Barrett, and the Catholic Mutual Relief Society (collectively, the "St. Casimir" defendants).[1] We affirm.

Riordan brought an action for defamation and tortious interference with contract against numerous parties including the Alliance and the St. Casimir defendants. Their action stemmed from the publication of an article in the monthly AMI newsletter, and the reprinting of the article in the St. Casimir Parish Sunday bulletin. The article related to residential treatment facilities operated by Riordan. The article stated:

### WARNING

We would like to urge any family who has a mentally ill family member living in residences owned and operated by Timothy Riordan and Jan Shannon, his wife, to move that person out of these residences immediately. The addresses of these units are 1665 N. Van Buren; 2032, 2034, 2036, 2038, 2040, 2040A, 2042 N. Holton.

There have been numerous complaints made alleging neglect and abuse of residents there. Local and state public and private mental health and health agencies have been frustrated in their attempts to insure that the residents are treated humanely and

---

[1] Although the case caption also lists Patricia Flannery as a defendant-respondent, we have been advised by letter that this appeal does not involve the claims against Ms. Flannery. Several other defendants also are not involved in this appeal; the Riordan complaint against them is pending in the trial court.

that policies and programs to meet the medical and psychiatric needs of the residents are in place. Mr. Riordan and Ms. Shannon are not operating a licensed treatment facility. Until their programs and policies, their treatment of the residents conform to accepted standards, and they cooperate with local agencies, we cannot recommend any person live in these residences.

The trial court first denied the Alliance's and the St. Casimir defendants' motions for summary judgment. Upon reconsideration, however, the trial court concluded that although the article was "capable of defamatory meaning," summary judgment was appropriate because the communication was conditionally privileged. The trial court explained that AMI and St. Casimir "shared a common interest with people involved with the care of the mentally ill within the community." Further, the trial court concluded that Riordan had "not met their burden in establishing that St. Casimir or AMI abused that conditional privilege." Riordan challenges the trial court conclusions regarding whether the communication was conditionally privileged, and whether the defendants abused the conditional privilege. On appeal, Riordan has framed the arguments solely with respect to the dismissal of the defamation claims; Riordan apparently does not challenge the trial court's dismissal of the tortious interference claims.

We review determinations of summary judgment applying the same standards as the trial court. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). The summary judgment methodology has been recited often, *see, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338-339, 294 N.W.2d 473, 476-

21

477 (1980); *In re Cherokee Park Plat*, 113 Wis. 2d 112, 116, 334 N.W.2d 580, 582-583 (Ct. App. 1983), and need not be repeated here. A motion for summary judgment shall be granted if the summary judgment submissions "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Section 802.08(2), STATS.

Recently, this court summarized the standard of review and method of analysis regarding a defamation claim and a "common interest" conditional privilege defense. We explained:

> In reviewing a claim for defamation, a court typically might make an initial determination of whether an alleged communication was defamatory; that is, whether it "tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Because not all defamatory communications are actionable, however, that initial determination is not necessarily required.
>
> A defamatory statement may be conditionally privileged if it is "made on a subject matter in which the person making the statement and the person to whom it is made have a legitimate common interest." If it is determined that the defamatory statement was conditionally privileged, the burden then shifts to the plaintiff to show that the conditional privilege was abused. It follows, therefore, that if an alleged communication is conditionally privileged, and if the privilege has not been abused, then arguments about whether the communication is defamatory are academic. Regardless of whether the alleged communication is defamatory, it could not support an action for defamation because of the privilege.

22

*Posyniak v. School Sisters of St. Francis*, 180 Wis. 2d 619, 628-629, 511 N.W.2d 300, 304-305 (Ct. App. 1993) (citations omitted).

Thus, in this case, we first consider the trial court's conclusion that the communication was conditionally privileged by virtue of the common interest between the Alliance and the St. Casimir defendants. As we explained in *Posyniak*:

In *Zinda [v. Louisiana Pac. Corp.*, 149 Wis. 2d 913, 440 N.W.2d 548 (1989)], the Wisconsin Supreme Court, relying on the Restatement (Second) of Torts (1976), defined and explained the rationale for the common interest privilege:

Section 596 of the Restatement 2d of Torts defines the "common interest" privilege:

An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know.

The common interest privilege is based on the policy that one is entitled to learn from his associates what is being done in a matter in which he or she has an interest in common. Thus, defamatory statements are privileged which are made in furtherance of . . . common business, or professional interests.

23

*Posyniak*, 180 Wis. 2d at 629, 511 N.W.2d at 305. Further, comment e of 596 of the Restatement (Second) of Torts explains:

> The common interest of members of religious, fraternal, charitable or other non-profit associations, whether incorporated or unincorporated, is recognized as sufficient to support a privilege for communications among themselves . . . . [T]he rule is applicable to communications between members and officers of the organization concerning the legitimate conduct of the activities for which it was organized.

Riordan argues that the communication was not conditionally privileged because:

> (1) The WARNING publication was not made "in furtherance of common property, business or professional interests" and (2) the granting of the conditional privilege would amount to denying appellants their constitutional right to tell their residents of their constitutional right to seek private, non-governmental, help for themselves and to not speak with governmental workers who can effectuate guardianships, commitments, or protective placements on them.

We reject both arguments.

Riordan maintains that AMI and the St. Casimir defendants do not share "common property, business or professional interests," and, therefore, their communication cannot be conditionally privileged. Riordan acknowledges, however, that AMI and St. Casimir "are non-profit charities with a special interest . . . in the

24

mental health area."[2] Thus, Riordan concedes the common interest that AMI and St. Casimir share, but then tries to draw too fine a line between what Riordan terms a "special interest" and a "professional interest." Clearly, if, as Riordan concedes, both AMI and St. Casimir are non-profit entities "with a special interest" in the care of the mentally ill, they do share a common, professional interest.

Riordan's next argument is no stronger. Riordan maintains that, somehow, "granting of the conditional privilege would amount to denying appellants their constitutional right" to advise residents of their rights. Riordan, however, fails to explain how AMI's and St. Casimir's conditional privilege to communicate the

---

[2] The special, common interest is evident. According to uncontroverted summaries in the respondents' briefs, "AMI is a volunteer, non-profit group composed of mental health care providers and families and friends of persons with mental illness which was organized, in part, to 'aggressively evaluate all mental health legislation, institutional policies and beaucratic [sic] operating rules and regulations affecting mental health patients and their families [and] . . . to seek out and actively support mental health programs and individuals acting to improve mental health care and treatment.' " Further, according to the respondents:

Father Michael Barrett, the priest at St. Casimir Parish, testified at his deposition that as part of his work he deals with individuals that are mentally ill. Furthermore, he has been approached by individuals seeking his assistance in placing a mentally ill person. In fact, the common interest between St. Casimir and its parishioners in the subject of mental illness is so great that Father Barrett had written a series of articles that appeared in the St. Casimir Parish bulletin dealing with the subject of mental illness. These articles were published prior to St. Casimir's republication of the article that is the subject of this litigation. Thus, it cannot be disputed that St. Casimir Parish and Father Barrett have a common interest with its parishioners in relation to the subject of the care and treatment of people with a mental illness.

warning denies Riordan the opportunity to counter that warning by communicating with residents, their families, and others. In concluding that the AMI/St. Casimir communication was conditionally privileged, the trial court did nothing that in any way would restrict the constitutional rights of Riordan or the residents of Riordan's facilities.

Next, Riordan argues that if the communication was protected by the common interest conditional privilege, the conditional privilege was abused. As the Supreme Court explained:

> However, conditional privilege is not absolute and may be forfeited if the privilege is abused. The Restatement 2d of Torts lists five conditions which may constitute an abuse of the privilege, and the occurrence of any one causes the loss of the privilege. The privilege may be abused: (1) because of the defendant's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) because the defamatory matter is published for some purpose other than that for which the particular privilege is given; (3) because the publication is made to some person not reasonably believed to be necessary for the accomplishment of the purpose of the particular privilege; (4) because the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged; or (5) the publication includes unprivileged matter as well as privileged matter.

*Zinda*, 149 Wis. 2d at 924-925, 440 N.W.2d at 553 (citations omitted). In this case, Riordan argues that the defendants abused the conditional privilege under the first, fourth, and fifth conditions.

In what at first might seem to be somewhat contradictory terms, the trial court concluded, "Plaintiffs have never claimed that St. Casimir or AMI abused a

privilege if the court so found. Even if they had, the plaintiffs have never offered evidence that any of the defendants abused their privilege." The trial court's approach is understandable. Upon reviewing both Riordan's brief opposing summary judgment and the materials on which it relied, as well as Riordan's brief to this court, we appreciate the trial court's difficulty in determining exactly what Riordan claimed and offered.

Both Riordan's brief in opposition to summary judgment and brief to this court are difficult to follow. Both make numerous, broad, unsupported allegations that ramble into areas of mental health public policy in an apparent effort to establish that the Alliance and the St. Casimir defendants knew the alleged falsity of the article. We note only a few of the many examples from Riordan's appellate brief:

> The **key is** to understand that those who are chronically mentally ill can **only be stabilized if they are medicated properly. They can only be medicated properly if they have good medical care from an [sic] good physician and follow up care and community help.** If they destabilize, they **quickly** end out on the street or hospitalized.
>
> Another key to stabilization for chronically mentally ill people is having a trusted friend or person who advocates for them and convinces them to continue their medication program. Almost all destabilization occurs for two reasons: (1) refusal to take medications and (2) incorrect medicating.
>
> Both AMI and Fr. Barret know this. They also know from their involvement in the area of mental health that if Shannon and Riordan's residents were not getting this good care, they would have been on the streets or in hospitals.
>
> Any person with two ounces of common sense in the mental health area knows it is impossible to get

27

stabilized chronically mentally ill residents who are denied good medical health care. ***They had to know what they were writing was a lie.***

(Emphasis in original.)

Later in the appellate brief, Riordan continues:

> Both AMI and Fr. Barrett, who belonged to AMI and has some background in mental health, are involved with the mentally ill. They know about the commitment laws since AMI was created to change the laws after many family members ended out on the streets after involuntary commitment laws changed and the mentally ill destabilized when they refused medications and did not get proper care and treatment.
>
> Therefore, they knew what they were writing was a lie, because they knew the chronically mentally ill ended out on the streets when their care was left up to themselves.. . . .
>
> Another reason we know that AMI and Fr. Barrett knew they were lieing [sic] is because they both knew you could only work with the mentally ill **on a voluntary basis** in the community.

(Emphasis in original.) Additionally, and nonsensically, Riordan writes, "The reckless disregard for any falsity in the article was predetermined by efforts of both AMI under William Otto and St. Casimir Parish under Fr. Barrett."

Regarding the fourth and fifth conditions, Riordan is no more logical. Arguing that the article included defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion was privileged, Riordan contends that the defendants:

> could have limited their article to saying they knew there was a disagreement between the county and Shannon and Riordan. The [sic] could have said

that Shannon and Riordan told their residents they had a right to **not** cooperate with the County. They could have said they had heard of complaints that they wanted resolved before advocating that families place relatives in the homes.

The point is **they went far beyond what they had to say and left a false picture of what was occurring** and why it was occurring. They lost the privilege by overreaching with its defamatory tone in order to overstate their case.

Finally, with regard to the fifth condition, Riordan focused on the second statement of the second paragraph of the article: "Local and state public and private mental health and health agencies have been frustrated in their attempts to insure that the residents are treated humanely and that policies and programs to meet the medical and psychiatric needs of the residents are in place." On appeal, Riordan argues:

Since William Otto knew or should have known Jan Shannon had asserted a constitutional right to advise her residents, then the privilege did not apply to the second statement of the second paragraph because **"the publication includes unprivileged matter as well as privileged matter."**

(Emphasis in original.)

As these examples illustrate, Riordan has failed to provide any coherent argument, supported by references to the record, to support the assertion that the defendants forfeited the conditional privilege. As Judge Fine noted a few years ago, a mere allegation that a defendant has abused the conditional privilege, in the absence of evidentiary material in the appellate record to support such a claim, is not sufficient to

defeat a summary judgment motion based on conditional privilege. *Miller v. Minority Brotherhood*, 158 Wis. 2d 589, 607-608, 463 N.W.2d 690, 697-698 (Ct. App. 1990) (Fine, J., concurring).[3]

Here, as the trial court concluded, the Alliance and the St. Casimir defendants clearly shared a common interest in the quality of the residential treatment facilities of concern to their members and parishioners. Although Riordan argued in the trial court that the privilege, if it existed, was "forfeited by abuse," neither there nor on appeal did Riordan adequately support that assertion. Thus, the trial court correctly concluded that Riordan had offered nothing to establish any genuine issue of material fact regarding whether any defendant had abused the privilege. Therefore, we conclude that the trial court was correct in granting summary judgment.

*By the Court.*—Judgment affirmed.

---

[3] Further, as Judge Fine explained, given the resolution of this issue at both summary judgment and on appeal, there is no need to decide the parties' dispute regarding whether Riordan Shannon and Riordan were "public officials." *See Miller*, 158 Wis. 2d at 608, 463 N.W.2d at 698 (Fine, J., concurring); *see also Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be discussed).