STATE of Wisconsin, Plaintiff-Appellant,

v.

Charles R. EDLEBECK, individually, and d/b/a Lannon Estates Mobile Home Park, James L. Ilk, Highway Mobile Homes Sales, Inc., and Lannon Estates, Inc., a Wisconsin corporation, Defendants-Respondents.

Court of Appeals

*No. 94–2888. Submitted on briefs July 28, 1995.—Decided September 6, 1995.*

(Also reported in 539 N.W.2d 469.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Bruce A. Craig*, assistant attorney general.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Charles F. Schroe-*

der of *Dubin, Balistreri & Schelbe* of Milwaukee, *Susan LaCava* of *Susan LaCava, S.C.* of Madison, and *David R. Friedman* of *Friedman Law Firm* of Madison.

Before Anderson, P.J., Brown and Nettesheim, JJ.

ANDERSON, P.J. The State of Wisconsin appeals from an order of the trial court wherein the court dissolved a temporary injunction against the defendants and dismissed the State's action. Because we conclude that the trial court incorrectly decided a legal issue and Edlebeck and the other defendants are therefore not entitled to judgment as a matter of law, we reverse and remand.

The State filed a complaint against Charles R. Edlebeck, a mobile home park operator and the owner of Lannon Estates Mobile Home Park, Lannon Estates, Inc. and Highway Mobile Homes Sales, Inc. Lannon Estates, Inc., and Highway Mobile Homes Sales were named as defendants. The complaint also named James L. Ilk, the president and managing officer of Lannon Estates, Inc., and a seller of new mobile homes. The complaint was filed in order to enjoin the defendants from violating WIS. ADM. CODE ch. ATCP 125, to seek civil forfeitures for the violations and to enjoin and abate the continued sale of mobile homes without a license in violation of §§ 218.11 and 218.12, STATS.

The complaint alleged, among other things, that Edlebeck and Ilk implicitly or explicitly informed prospective tenants that the purchase of a mobile home from Edlebeck or Highway Mobile Homes Sales was a precondition to renting a site at Lannon Estates Mobile Home Park or that the purchase of a mobile home from another dealer would result in discriminatory treatment against them, in violation of § ATCP 125.02(1)

747

and (2). The complaint alleged that Edlebeck informed some tenants that they would be charged for water usage, in violation of §§ ATCP 125.03(4) and 125.04(3). The complaint also alleged failure to provide a purchaser of a mobile home and prospective tenant with a copy of the rental agreement prior to the tenant signing the mobile home purchase contract. *See* § ATCP 125.03(1). Additionally, the complaint alleged that Edlebeck and Ilk sold mobile homes at the Lannon Estates Mobile Home Park location without a license contrary to §§ 218.11 and 218.12, STATS.

The State filed a petition and motion for a temporary injunction in circuit court. The defendants filed motions to dismiss.[1] The parties stipulated to the imposition of a temporary injunction while the issue was submitted to the court as to whether manufactured homes fall within the definitions of mobile home under § ATCP 125.01(1) and § 218.10(2), STATS. The trial court subsequently filed a memorandum decision, agreeing with the defendants' contention that: "[T]he State's attempt to apply regulations governing mobile homes to manufactured homes must be rejected. The injunction should be dissolved and the case dismissed." The State appeals.

Although the State contends that the trial court made no mention of summary judgment in its decision and did not engage in the analysis typically required, the court treated the motions to dismiss as motions for summary judgment. While the trial court might not have expressly stated that it was converting the motions to those of summary judgment, we conclude that this is a functional equivalent of a summary judg-

---

[1] For purposes of this appeal, we will refer to the defendants collectively as "Edlebeck."

ment motion because the court did consider items outside the pleadings. *See* § 802.06(3), STATS.

In reviewing a summary judgment determination, we apply the same standards as the trial court. *Posyniak v. School Sisters of St. Francis*, 180 Wis. 2d 619, 627, 511 N.W.2d 300, 304 (Ct. App. 1993). A summary judgment motion shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS. Importantly, we note that a trial court's decision granting summary judgment will be reversed if it incorrectly decided legal issues or if material facts were in dispute. *Coopman v. State Farm Fire & Casualty Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610, 612 (Ct. App. 1993). The methodology prohibits this court from deciding issues of fact; we must only decide whether a factual issue exists. *Id.*

The State argues that "the trial court did not make any findings that defendants' vehicles, alleged by the State to be 'mobile homes' in its complaint, did not fall within the definitions of that term in § ATCP 125.01(1) and § 218.10(2), STATS." Edlebeck, however, contends that the trial court was correct in holding that the evidence that manufactured homes are not mobile homes was uncontradicted and that the State was not authorized to regulate this distinctive form of housing.

A "mobile home" is defined by § 218.10(2), STATS., as "a vehicle designed to be towed as a single unit or in sections upon a highway by a motor vehicle and equipped and used, or intended to be used, primarily for human habitation, with walls of rigid uncollapsible

construction." Similarly, a "mobile home" is defined by § ATCP 125.01(1) as: "a unit designed to be towed or transported and used as a residential dwelling, but does not include a unit used primarily for camping, touring, or recreational purposes."

We conclude that the trial court should have applied the definitions of "mobile home" under § ATCP 125.01(1) and § 218.10(2), STATS., to the homes at issue in the present case. We agree with the State that the term "manufactured home"[2] is limited to §§ 101.90-101.96, STATS., and is not relevant to the dealer licensing provisions of ch. 218, STATS., and the regulation of mobile home parks pursuant to ch. ATCP 125. Unlike the purposes of ch. ATCP 125 and ch. 218, which are to regulate dealers and mobile home parks, the purpose of

---

[2] Mobile homes and manufactured homes are both defined in § 101.91, STATS., as they pertain to §§ 101.90-101.96, STATS. Section 101.91(1) defines "mobile home" as:

> [A] vehicle manufactured or assembled before June 15, 1976, designed to be towed as a single unit or in sections upon a highway by a motor vehicle and equipped and used, or intended to be used, primarily for human habitation, with walls of rigid uncollapsible construction, which has an overall length in excess of 45 feet.

"Manufactured home" is defined by § 101.91(2) as either of the following:

> (a) A structure, transportable in one or more sections, which in the traveling mode is 8 body feet or more in width or 40 body feet or more in length, or, when erected on site is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities.
> (b) A structure which meets all the requirements of par. (a) except the size requirements, and with respect to which the manufacturer voluntarily files a certification required by the secretary of housing and urban development and complies with the standards established under 43 U.S.C. 5401 to 5425.

§§ 101.90-101.96 is to establish uniform construction standards, inspection procedures and licensing of manufacturers of manufactured homes and mobile homes. *See* § 101.90. These are two different purposes and clearly the federal law does not preempt the state regulation of dealer licensing and mobile home parks.

■

It is unclear from the record whether the homes at issue in this appeal fall within the definitions of "mobile home" under ch. ATCP 125 and ch. 218, STATS. We therefore remand so the trial court can apply these definitions.[3]

■

As we stated in *State v. Flood*, 195 Wis. 2d 515, 533–34, 536 N.W.2d 458, 466 (Ct. App. 1995):

> [Z]oning regulations and other state and local restrictions have limited the number of mobile

---

[3] We further note that the definition of "manufactured home" does not necessarily contradict the definitions of "mobile home" found in ch. ATCP 125 and ch. 218, STATS. The definitions in ch. ATCP 125 and ch. 218 require that a mobile home be a unit (1) designed to be towed and (2) equipped and used or intended to be used for human habitation/residential dwelling. It then follows that, if a home is a structure which is transportable, built on a permanent chassis and designed to be used as a dwelling, it could very well fulfill the definition of mobile home under the provisions stated above. *See* § 101.91(2), STATS. Moreover, in *State v. Flood*, 195 Wis. 2d 515, 530, 536 N.W.2d 458, 464 (Ct. App. 1995), we held that a "mobile home" must "be *designed* to be both transported and to be a residential dwelling, but the rule does not impose the requirement of doing both at the same time." Therefore, the argument that double-wide homes are not mobile homes because they are transported in two parts and consequently cannot be inhabited at the same time they are transported failed. *See id.*

home park sites and created a monopoly position for park operators. . . . We conclude that the DATCP could have reasonably determined that park operators have sufficient market power such that the tie-in selling of mobile homes restricts competition in the mobile home market and encourages unfair sales tactics.

Because of the disparate bargaining power between parties, we conclude that ch. 218, STATS., and ch. ATCP 125 regulate these manufactured homes when they are placed in a mobile home park and meet the appropriate definitions, unless the legislature or the administration decide otherwise. We therefore reverse and remand the cause of action and order that the temporary injunction be reinstated.

*By the Court.*—Order reversed and cause remanded with directions.